197 So.2d 96 (1967)
Jessie J. TRAHAN
v.
Tomey PERKINS et al.
No. 6945.
Court of Appeal of Louisiana, First Circuit.
March 13, 1967.
Rehearing Denied April 17, 1967.
James E. Moore, of Franklin & Keogh, Baton Rouge, for appellant.
John L. Avant, of Dodd, Hirsch, Barker, Avant & Wall, Baton Rouge, for appellees.
Before LOTTINGER, REID and SARTAIN, JJ.
LOTTINGER, Judge.
This appeal arises out of an automobile accident which occurred on November 5, 1965, at approximately 1:10 P.M. on U. S. Highway 190 near Denham Springs, Louisiana. Involved in the accident was a 1954 Buick automobile driven by the plaintiff, Jessie J. Trahan, and a 1962 Pontiac automobile being driven by the defendant, Tomey Perkins. The accident occurred when Mr. Perkins attempted to make a left turn into a service station from Highway 190 as Mr. Trahan was attempting to pass the Perkins vehicle. Mr. Trahan swerved his automobile, left the highway, returned, and *97 came to rest in the service station driveway. It was stipulated between counsel that Mr. Trahan's automobile was a total loss as a result of the accident. Mr. Trahan received some personal injury as a result of the accident and that afternoon consulted Dr. Joseph Sabatier.
After a trial on the merits, the Trial Judge found that the accident was caused by the defendant's negligence, and rendered judgment against him and the Home Indemnity Company, his liability insurer, and in favor of Mr. Trahan, awarding Mr. Trahan the sum of $750.00 for the property damage to his automobile, and the sum of $100.00 for the personal injury sustained by him. From this judgment, Tomey Perkins and the Home Indemnity Company have appealed, asking that the award for property damage to Mr. Trahan's automobile be reduced to the sum of $400.00 and that the $100.00 award made to plaintiff for his personal injury be reversed entirely. Alternately, appellants urge that an award of $25.00 to $50.00 would be more than sufficient to compensate the plaintiff for his personal injury.
The appellee has answered the appeal, praying that the Trial Court's award of $100.00 for personal injuries be increased to the sum of $1,000.00 and that the $750.00 award for property damage be affirmed.
The appellants assign two specifications of error, the first of which is that the Trial Court erred in awarding the plaintiff $750.00 for the destruction of an automobile which had been purchased by him for $500.00 one year prior to the accident, and, secondly, that the Trial Court erred in awarding the plaintiff $100.00 for what they characterized as a slight bump on the head requiring no medical treatment.
The record shows that the plaintiff, Mr. Trahan, purchased the 1954 Buick automobile in December of 1964 for a price "in the neighborhood of $500.00". He acquired this vehicle from Mr. H. W. Nickens of Miller Buick Company, a friend and acquaintance of his. Mr. Nickens, who testified, stated that this vehicle had been his personal automobile, and that at the time of the sale, it had had a value of $750.00, but that he had sold the vehicle to the plaintiff for about $500.00. In the interval between his acquisition of the vehicle in December of 1964, and the time of the accident, November of 1965, the plaintiff used and drove the vehicle, during which time Mr. Nickens testified that he saw the vehicle on several occasions. The substance of Mr. Nickens' testimony is that although the vehicle was worth $750.00 at the time that he sold it to Mr. Trahan, he sold it to him for a reduced price because Mr. Trahan had been a good customer of his for quite some time. Mr. Nickens testified that in his opinion, the Trahan vehicle was still worth $750.00 at the time of the accident by reason of its condition and by reason of the fact that the plaintiff had spent a considerable amount of money on the vehicle after purchasing it, having installed a new clutch, a new set of tires, etc.
Mr. Leo Zuber testified on behalf of the defendants with reference to the value of the Trahan automobile and stated that he was a used car salesman at the Chevrolet agency in Baton Rouge and that he had been so employed for the past nine years. When he attempted to testify about automobile values from a "Black Book" of used car values, counsel for plaintiff objected but we do not believe that the Trial Judge's ruling thereon is of any consequence since Mr. Zuber's testimony was not predicated on the values reflected in this book. Nevertheless, Mr. Zuber did testify from his experience as a used car salesman and not directly in connection with this book. He stated that in his opinion the retail value of a 1954 Buick automobile like Mr. Trahan's in November of 1965 was $395.00. He also testified that this same 1954 Buick in December of 1964 would have been worth between $400.00 and $495.00. It was conceded by Mr. Zuber and counsel for defendants that Mr. Zuber at no time had inspected or even seen the Trahan automobile, although *98 Mr. Nickens was thoroughly familiar with the vehicle.
Considering the testimony of the two witnesses, both of whom were employed as used car salesmen, we are somewhat reluctant to accept the testimony of Mr. Nickens, who, incidentally, was well acquainted with the plaintiff, to the effect that he had sold Mr. Trahan an automobile for $500.00 in November of 1964, when the vehicle in truth and in fact at that time was worth $750.00, and that the same automobile, approximately 11 months later, was still worth $750.00. We do not believe that Mr. Nickens' explanation that the reason that he sold this vehicle to Mr. Trahan but for two-thirds of its alleged actual retail value because Mr. Trahan was a good customer of his and had attempted to buy a car before on many occasions is entirely credible. We note that the price actually paid by Mr. Trahan in December of 1964, $500.00, and Mr. Zuber's opinion as to the value of a 1954 Buick in excellent condition in December of 1964, $495.00, are remarkably similar. We are of the opinion that the action of the Trial Judge in awarding the plaintiff half again as much as he had paid for his automobile one year after he purchased it was manifestly erroneous. We believe that the maximum value which can properly be attributed to the Trahan automobile as of the date of the accident, even taking into account the greater weight which the Trial Judge obviously accorded Mr. Nickens' testimony over that of Mr. Zuber, is the sum of $500.00.
With reference to the Trial Judge's award to the plaintiff of the sum of $100.00 for personal injury we have examined the record, and particularly the testimony of Dr. Sabatier, who treated the plaintiff. The doctor testified with reference to the plaintiff's injury as follows:
"A. He said that he was generally shaken up and he was concerned about a blow to his right forehead. He had a headache and he had some pain in his neck at that time. I had previously seen Mr. Trahan on several occasions, the most notable of which was in 1950 when he sustained a severe head injury with prolonged unconsciousness and evidence of permanent brain damage manifested by a visual field defect, which was subsequently proven to be of a permanent nature in that it did not disappear, verified by electro-encephalographic studies and so forth, and it had been my instructions subsequent to recovering from the acute affects of his original injury to be particularly cautious concerning subsequent head injuries and * * *
Q. Had you told him that in the event he received any kind of trauma to the head in the future that he should immediately consult a physician?
A. Yes, sir, I did.
Q. Was it your medical opinion, doctor * * *
MR. MOORE: Well, Your Honor, I don't mind him leading the witness, but I don't want him to testify for the witness.
MR. AVANT: Well, I'm trying * * *
THE COURT: You can lead medical witnesses, go on.
Q. Was it your medical opinion, doctor, at the time you saw Mr. Trahan on November 5th that he did, in fact, have some pain in his neck?
A. He complained to me of this and he had evidence of a bruise to his right forehead and this was consistent with the type of injury of which he complained, the type of symptoms of which he complained. Neurologic examination at that time failed to reveal any significant abnormality attributable to the injury at hand, and I reassured him and told him I thought he had suffered *99 no significant damage as the result of the injury.
Q. Did he come back to see you any more?
A. Not for that injury.
Q. Do you have a medical opinion, doctor, whether or not at the time Mr. Trahan saw you and before you reassured him that he was, as to whether he was emotionally upset and disturbed because he had received a blow to his head?
A. He was concerned, I think, and in my opinion justifiably so, because of his previous serious experience with a head injury, brain injury.
Mr. Trahan testified that he was "shook up" after the accident and until he talked to Dr. Sabatier, at which time he felt relieved. He testified that he had received a bump on his head, and that after the accident, his neck began to hurt him and that this pain continued for a period of several days.
The Trial Judge in his oral reasons for judgment made the following statement:
"The Court does not really think Mr. Trahan was hurt. He was just shook up and apprehensive, primarily due to a prior brain injury, but I do not believe he suffered any physical damages * * *. He got a knock on the head and was concerned about it and I will give him $100.00, but I doubt that he suffered $100.00 worth."
Under the circumstances, we must take issue with the Trial Judge with reference to the amount of the award made to Mr. Trahan for his personal injury. It is well established in our jurisprudence that a tort which gives rise to mental anguish or emotional upset or other mental suffering on the part of the injured party creates a claim for damages which is separate and distinct from any claim for physical pain or suffering resulting from physical injury. Mr. Trahan had sustained a severe head injury in 1950 which resulted in prolonged unconsciousness and permanent brain damage, and had been instructed by Dr. Sabatier subsequent to his recovery to be particularly cautious concerning subsequent head injuries. He also had been told by Dr. Sabatier that in the event that he received any kind of injury to the head in the future that he should immediately consult a physician. This advice by his physician, coupled with his previous illness could do no less than place Mr. Trahan in a state of extreme apprehension as to his condition and cause great mental anguish in the interval between the time of the accident and the time that he saw Dr. Sabatier and was reassured. Considering the severity of his prior injury and the instructions received by him from his physician, as well as the actual physical injury sustained by him, we believe that the award of $100.00 by the Trial Judge was so inadequate as to constitute manifest error. We believe that the sum of $500.00 would adequately compensate Mr. Trahan for the physical pain, suffering, and mental anguish occasioned by this accident. See McCastle v. Woods, La.App., 180 So.2d 421.
Accordingly, the judgment of the Trial Court is amended to as to increase the total award to Mr. Trahan to the sum of $1000.00, $500.00 of which is for loss of his automobile, and $500.00 of which is to compensate him for the physical pain, suffering and mental anguish suffered by him, and the judgment as amended, is affirmed, the appellants to pay all costs of this appeal.
Judgment amended and affirmed.