JOHNSON ET AL. *v.* NEW YORK STATE EDUCA-
TION DEPARTMENT ET AL.

No. 71–5685.  Argued November 8, 1972—Decided
November 20, 1972

*Carl Jay Nathanson* argued the cause and filed briefs
for petitioners.

*Joel Lewittes,* Assistant Attorney General of New York,
argued the cause for respondents.  With him on the brief
were *Louis J. Lefkowitz,* Attorney General, *Samuel A.
Hirshowitz,* First Assistant Attorney General, and *Iris A.
Steel,* Assistant Attorney General.  *Henry A. Weinstein*
filed a brief for respondent the Board of Education, Union
Free School District No. 27.

Briefs of *amici curiae* were filed by *J. Harold Flannery*
for the Center for Law and Education, Harvard Univer-
sity, et al., and by *John E. Coons* for the American Fed-
eration of Teachers et al.

PER CURIAM.

We granted certiorari to review the judgment of the
United States Court of Appeals for the Second Circuit,
449 F. 2d 871 (1971), affirming the District Court's dis-
missal of petitioners' complaint challenging the consti-
tutionality of New York Education Law § 701 *et seq.*
(1971).  405 U. S. 916 (1972).  However, respondents'
brief states that "[o]n May 3, 1972, the qualified voters
of the respondent school district elected by majority
vote to assess a tax for the purchase of *all* textbooks

for grades one through six in the schools of the district." In light of this fact, and given the suggestion at oral argument that the books themselves have a life expectancy of five years, the judgment is vacated and the case is remanded to the United States District Court for the Eastern District of New York to determine whether this case has become moot.

MR. JUSTICE MARSHALL, concurring.

While I join the Court's decision, I feel obliged to state somewhat more fully what I view to be the reasons for and meaning of this remand.

The New York statutory scheme here under attack effectively denies textbooks to indigent elementary public school children unless the voters of their district approve a tax especially for the purpose of providing the books.[1] Petitioners who are indigent recipients of public assistance allege, *inter alia,* that the statute, as applied to their children, creates a wealth classification violative of the Equal Protection Clause.

When this action was initiated in September 1970, respondent Board of Education of Union Free School District No. 27 was not providing free textbooks to petitioners' children, although textbooks were available upon the payment of a fee, which petitioners were unable to afford.[2] The practical consequence of this situation was that indigent children were forced to sit " 'bookless, side by side in the same classroom with other more

---

[1] Under New York law, local school districts are required to loan textbooks free to students in grades seven through 12. N. Y. Educ. Law § 701 (1971). No such provision is made for children in grades one through six; free textbooks are to be made available to children in those grades only upon the vote of the majority of the district's eligible voters to levy a tax to provide funds for the purchase of the textbooks, N. Y. Educ. Law § 703 (1971).

[2] The fee imposed was $7.50 per child.

wealthy children learning with purchase[d] textbooks [thus engendering] a widespread feeling of inferiority and unfitness in poor children [which] is psychologically, emotionally and educationally disastrous to their well being.' " [3]   Indeed, an affidavit submitted to the District Court indicated that in at least one case, an indigent child was told that "he will receive an 'F' for [each] day because he is without the required text-books. When the other pupils in the class read from text-books, the teacher doesn't let him share a book with another pupil, instead she gives him paper and tells him to draw." [4]   Despite this evidence, the Court of Appeals, with one Judge dissenting, affirmed the District Court's dismissal of the complaint.  We granted certiorari.[5]

This case obviously raises questions of large constitutional and practical importance.  For two full school years children in elementary grades were denied access to textbooks solely because of the indigency of their families while these questions were being considered by the lower courts.  After we had granted certiorari, however, a majority of the voters in respondent school district finally agreed to levy a tax for the purchase of textbooks for the elementary grades, and we are told that free textbooks have now been provided.

I join in the Court's decision to remand the case so that the District Court can assess the consequences of this new development.  I do so because I believe that the Court acts out of a proper sense of our constitutional duty to decide only live controversies, and because I believe that the District Judge can best resolve the factual issues upon which proper resolution of the mootness question depends.  Certainly, our mere act of re-

---

[3] 449 F. 2d 871, 873 (CA2 1971) (quoting with approval petitioners' allegations).

[4] Affidavit of Carl Jay Nathanson, App. 28.

[5] 405 U. S. 916 (1972).

manding in no way suggests any particular view as to whether this case is in fact moot. That decision is for the District Judge in the first instance.

In reaching his decision, the District Judge will, of course, have to take into account the standards that we have previously articulated for resolving mootness problems. On the one hand, "[a] case [may be] moot if subsequent events [make] it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States* v. *Concentrated Phosphate Export Assn.,* 393 U. S. 199, 203 (1968). See also *SEC* v. *Medical Committee for Human Rights,* 404 U. S. 403 (1972). But on the other, "[m]ere voluntary cessation of allegedly illegal conduct does not moot a case; if it did, the courts would be compelled to leave '[t]he defendant . . . free to return to his old ways.'" *United States* v. *Concentrated Phosphate Export Assn., supra,* at 203. In the context of constitutional questions involving electoral processes, these principles have generally found expression in the proposition that a case is not moot if "[t]he problem is . . . 'capable of repetition, yet evading review.'" *Moore* v. *Ogilvie,* 394 U. S. 814, 816 (1969).[6]

In applying these standards to this case, the District Judge should ascertain the nature of the textbook problem for the elementary grades in respondent school district. Respondents have not suggested that the problem has been resolved once and for all by the recent purchases. To be sure, they do contend that the new textbooks have a useful life of five years. But does this adequately account for destruction by extraordinary

---

[6] These prior statements provide only rough guidance in this case, particularly since we deal here with an electoral process that is employed only on an irregular basis as new books are needed. Nevertheless, I think they are enlightening as to the appropriate inquiries for the District Court to make on remand.

events, for loss due to theft, and for obsolescence due to curriculum changes? And, even accepting the five-year figure, does this make the problem a non-recurring one insofar as the continuing viability of this litigation is concerned?

The District Judge should also investigate the posture in which the legal issues presented by this case might again arise when the books begin to wear out. Will the respondent school district delay holding a new election until the new books are actually needed? Is it possible that litigation would again have to proceed for an entire school year, or more, while indigent children are deprived of books, before the constitutionality of that deprivation is finally determined?

These seem to me essential questions for the District Court to consider on remand in disposing of the issue of mootness.[7]

---

[7] Nor should the District Court overlook the fact that this is a class action brought by petitioners "on their own behalf and on behalf of their children and all other persons similarly aggrieved." Even if the case is now moot as to these particular petitioners, there may be other members of the class who remain aggrieved and thus the action may remain a viable one, see, e. g., Cypress v. Newport News General & Nonsectarian Hospital Assn., 375 F. 2d 648, 657–658 (CA4 1967); Gatling v. Butler, 52 F. R. D. 389, 394–395 (Conn. 1971). Cf. Brockington v. Rhodes, 396 U. S. 41, 43 (1969).