349 So.2d 305 (1977)
CIVIL SERVICE COMMISSION OF the CITY OF NEW ORLEANS
v.
Charles C. FOTI, Jr., Criminal Sheriff of the Parish of Orleans.
No. 59386.
Supreme Court of Louisiana.
June 20, 1977.
Rehearing Denied September 2, 1977.
*306 William J. Guste, Jr., Atty. Gen., Louisiana Dept. of Justice, Ralph D. Dwyer, Jr., Many, LoCoco & Dwyer, New Orleans, for plaintiff-appellant.
T. Allen Usry, Usry, Leefe, Hartley & Stahl, New Orleans, for defendant-appellee.
DIXON, Justice.
This declaratory judgment action was brought by the Civil Service Commission of the City of New Orleans against the Criminal Sheriff of the Parish of Orleans seeking a decree that all personnel of the sheriff's "Rehabilitation Unit" are members of the classified service of the City of New Orleans. The sheriff reconvened, praying for a declaration that R.S. 33:1529 (Act 509 of 1968) is unconstitutional and that all his employees are in the State unclassified civil service.
The district court dismissed plaintiff's suit and granted judgment on the defendant's reconventional demand, decreeing that R.S. 33:1529 is unconstitutional as having been repealed by the 1974 Constitution,[1] and that all employees of the sheriff, except those who had attained classified status prior *307 to January 1, 1975, were unclassified employees in the State civil service.
The record shows that Louis Heyd, Jr., the predecessor of defendant Charles C. Foti, Jr., planned the establishment of a rehabilitation program in the Orleans Parish Prison, and obtained the passage of Act 509 of 1968, now R.S. 33:1529, which provides:
"A. The positions of employment covering the employees of the criminal sheriff of the parish of Orleans within the Orleans Parish Prison proper shall, on and after January 1, 1969, be in the classified service of the city of New Orleans, and on and after said date shall be governed by all of the provisions of Section 15, Article XIV of the Constitution of Louisiana in the same manner and to the same extent as are other employees and positions placed by said provisions within the classified civil service of New Orleans.
"B. All employees of the criminal sheriff of the parish of Orleans whose positions of employment are placed in the classified civil service of the city by the provisions of this section shall, on January 1, 1969, acquire permanent civil service status in the class of position they are occupying on such date, subject to passing a qualifying noncompetitive test, prescribed and given within a reasonable time thereafter by the director of the Department of City Civil Service, in order to determine their fitness to perform satisfactorily the duties of their positions. Thereafter they shall be deemed classified civil service employees in their respective classifications, and shall be subject to and governed by the provisions of Section 15 of Article XIV of the Constitution of Louisiana and the rules and regulations adopted by the New Orleans Civil Service Commission; provided, however, that the pay of any employee on the date of the inclusion of his position in the classified state service shall not be reduced by the application of the uniform pay plan to his class of position."
The reference in the act to employees "within the Orleans Parish Prison proper" was intended, the testimony shows, to divide the employees of the sheriff into two divisions: "front office people," courtroom employees, process servers, etc. would remain unclassified employees; employees who dealt with prisoners who were confined would be classified, because "that is where you needed professional people." The rehabilitation program was vague and ill-defined, consisting largely of volunteer workers operating a "crisis" program and a "work release" program from one of the floors of the prison. The program, or part of it, was moved during Heyd's administration to an abandoned fire station on Thalia Street, but Heyd still considered that the rehabilitation employees would be in the classified service. Therefore, though the act by its words created a geographical division among the employees of the sheriff, Heyd's intention was to classify those employees whose functions required them to deal with the prisoners.
Sheriff Foti testified that when he took office in April, 1974, there was practically no rehabilitation programonly a chaplain paid in part by a church organization and a crisis clinic, both located in the prison. A work release program was operated on Thalia Street by classified deputies under an unclassified director. In financing the new rehabilitation unit, Foti activated a dormant federal grant, and with funds from the federal and city governments employed personnel under what he called "personal service contracts." The failure of Foti to obtain the director for the Rehabilitation Unit from a list of qualified applicants on the civil service list precipitated this litigation.
Sheriff Foti contends that R.S. 33:1529 is unconstitutional as violative of both the 1921 and 1974 Constitutions. It is argued that the statute was unconstitutional when written (in 1968) because (1) it attempted to place unclassified State civil servants in the classified city civil service in violation of La.Const. of 1921, Art. XIV, § 15(G)(c) and (2) it constituted a "local and special" law, and no compliance with the publication requirements of La.Const., Art. IV, § 6. Alternatively, *308 if the court concludes that the statute does not violate the 1921 Constitution, Sheriff Foti argues that the statute is in conflict with certain provisions of the present Constitution.
Article XIV, § 18 of the present Constitution provides:
"(A) Laws in force on the effective date of this constitution, which were constitutional when enacted and are not in conflict with this constitution, shall remain in effect until altered or repealed or until they expire by their own limitation.
"(B) Laws which are in conflict with this constitution shall cease upon its effective date." (Emphasis added).
Accordingly, laws which violated the former Constitution are void and ineffective. Sheriff Foti's initial argument is that the State could not constitutionally place a State unclassified civil servant in the city classified civil service. This argument is based on La.Const. of 1921, Art. XIV, § 15(G)(c) which provided:
"(c) Although the Legislature shall not increase the exemptions or add to the unclassified service defined in (G)(a), no provision or restriction in (G)(a) or this section shall deny to the Legislature or to the governing body of any city, or any parish government jointly with one or more municipalities under a plan of government, having a Civil Service System, the power to place in the classified state or city service, as the case may be, any offices and positions, except elective offices, which are placed in the unclassified service by (G)(a), provided the governing body of any city or any parish governed jointly with one or more municipalities or any municipality desiring to so place in the classified state or city service, as the case may be, any offices and position shall notify, in writing, the city or state Civil Service Commission, as the case may be, of its desire and intent to do so at least six months prior to the effective date of the inclusion of said offices under said system." (Emphasis added).
It is contended that the language italicized above limits the State to placing State unclassified employees in the State classified civil service and, thus, since the office of criminal sheriff of Orleans Parish is allegedly a "state" position, the legislature could not place his employees in the city classified civil service. A reading of the italicized phrase out of context does appear to substantiate this claim. However, the phrase is also used in the following clause to explain that the governing body of any city or parish which desires to place any offices or positions in the state or city service, must give notice to the respective civil service commission. Thus, reading the whole of the provision leads to the conclusion that the italicized phrase was not intended to operate as a restriction upon the legislature, but meant that the legislature or local governing authority could place employees who were in their respective unclassified service into the classified service of the State or city civil service after proper notice to the civil service commission involved.
Since a notice of the intention to apply for the passage of Act 509 of 1968 was not published, it is also argued that the law violates La.Const. of 1921, Art. IV, § 6 which provided:
"No local or special law shall be passed on any subject not enumerated in Section 4 of this article, unless notice of the intention to apply therefor shall have been published, without cost to the State, in the locality where the matter or things to be affected may be situated, which notice shall state the substance of the contemplated law, and shall be published at least thirty days prior to the introduction into the Legislature of such bill, and in the same manner provided by law for the advertisement of judicial sales. The evidence of such notice having been published shall be exhibited in the Legislature before such act shall be passed, and every such act shall contain a recital that such notice has been given."
However, as noted above, the 1921 Constitution expressly granted the legislature the power to place "any offices and positions" into the city classified civil service. *309 It has repeatedly been held that the proscriptions of Article IV, § 6 are inapplicable when the Constitution gives the power to adopt legislation on a particular subject, even though otherwise "special or local" in character. See, e.g., Fenner v. Board of Commissioners of Red River, Atchafalaya and Bayou Boeuf Levee District, 137 La. 557, 68 So. 953 (1915); Mobley v. Police Jury of Bossier Parish, 41 La.Ann. 821, 6 So. 779 (1889); Excelsior Planting & Manufacturing Co. v. Green, 39 La.Ann. 455, 1 So. 873 (1887); Davidson v. Houston, 35 La.Ann. 492 (1883); New Orleans Taxpayers' Association v. City of New Orleans, 33 La.Ann. 567 (1881). Cf. Williams v. Guerre, 182 La. 745, 162 So. 609 (1935); State v. Dalon, 35 La.Ann. 1141 (1883). Thus, pretermitting whether R.S. 33:1529 is a "local or special" law, we conclude that the enactment of the statute did not violate La.Const. of 1921, Art. IV, § 6.
As quoted above, the present Constitution, Art. XIV, § 18, provides that laws which were constitutional when enacted remain effective if they are not in conflict with the 1974 Constitution. Since we have determined that R.S. 33:1529 did not violate the 1921 Constitution, it remains effective if its provisions do not contravene the 1974 Constitution.
Sheriff Foti argues that the present Constitution places his personnel in the unclassified civil service. He bases this argument upon Art. X, § 2 and Art. V, § 32 which provide:
"The state and city civil service is divided into the unclassified and the classified service. Persons not included in the unclassified service are in the classified service.
"The unclassified service shall include the following officers and employees in the state and city civil service:
". . .
"(10) employees, deputies, and officers of the legislature and of the offices of the governor, lieutenant governor, attorney general, each mayor and city attorney, of police juries, school boards, assessors, and of all offices provided for in Article V of this constitution except the offices of clerk of the municipal and traffic courts in New Orleans . . ." (Emphasis added). Article X, § 2(B)(10).
"Except for provisions relating to terms of office as provided elsewhere in this Article, and notwithstanding any other contrary provision of this constitution, the following courts and officers in Orleans Parish are continued, subject to change by law: the civil and criminal district courts; the city, municipal, traffic, and juvenile courts; the clerks of the civil and criminal district courts; the civil and criminal sheriffs; the constables and the clerks of the first and second city courts; the register of conveyances; and the recorder of mortgages." (Emphasis added). Article V, § 32.
These provisions clearly provide that the criminal sheriff's employees and deputies are unclassified employees. Since R.S. 33:1529 on its face conflicts with the constitutional provisions, Art. XIV, § 18(B) repealed the statute.[2] However, the 1974 Constitution provides in Art. XIV, § 9:

*310 "Upon the effective date of this constitution, all officers and employees of the state and of the cities covered hereunder who have status in the classified service shall retain said status in the position, class, and rank that they have on such date and shall thereafter be subject to and governed by the provisions of this constitution and the rules and regulations adopted under the authority hereof." (Emphasis added).
By virtue of Art. XIV, § 35, the 1974 Constitution became effective at 12:00 midnight on December 31, 1974. Accordingly, employees of the criminal sheriff who prior to the effective date had acquired classified status shall retain that status.[3]
Those employees of the criminal sheriff of the Parish of Orleans who (1) by the terms of R.S. 33:1529 work "within the Orleans Parish Prison proper" and (2) acquired their positions prior to 12:00 p. m. on December 31, 1974, retain their classified status in the city civil service. The "prison proper" is a geographical division. However, it cannot be assumed that the legislature intended that the prison, as it existed in 1968, should never be expanded nor moved. R.S. 15:1134 (Act 441 of 1970, as amended by Act 723 of 1972) specifically provides for minimum security structures where the Orleans Criminal Sheriff may operate "community rehabilitation centers." The record before us does not contain specific enough evidence to decide which individual employee is classified. In reaching those decisions, however, the parties are instructed that the "prison proper," as used in R.S. 33:1529, includes employees of the sheriff in the Orleans Parish Rehabilitation Unit. All other employees of the Criminal Sheriff of the Parish of Orleans are and remain State unclassified employees.
For these reasons the judgment of the district court is affirmed, at plaintiff's cost.
NOTES
[1] The case was initially appealed to the Fourth Circuit Court of Appeal. Since the judgment specifically decreed that R.S. 33:1529 is unconstitutional as being repealed by the 1974 Constitution, the Court of Appeal transferred the appeal to this court. La.Const. Art. V, § 5(D)(1); C.C.P. 2162.
[2] The district judge, who also reached this conclusion, stated that the result was "reaffirmed" by the omission in the 1974 Constitution of Art. XIV, § 15(G)(c) of the 1921 Constitution (see text, supra) which allowed the governing bodies of the State or city to place unclassified positions within the classified service. Since this 1921 constitutional provision was not specifically continued as a statute by virtue of La.Const. of 1974, Art. XIV, § 16, it was repealed by the 1974 Constitution. See Art. 14, § 17 of the 1974 Constitution. However, we do not rely upon this repeal in reaching the conclusion that R.S. 33:1529 contravenes the 1974 Constitution. In fact, it is arguable that the wording in Art. V, § 32 to the effect that the office of criminal sheriff is continued "subject to change by law," would permit the legislature to reestablish the office of criminal sheriff as only a statutory office. Thus, the office of criminal sheriff would be taken out of Art. V, so that Art. X, § 2(B)(10) would not apply to place the sheriff's employees in the unclassified service. However, even assuming that this provision would allow the legislature through appropriate legislation to place some or all of the criminal sheriff's employees in the State or city classified civil service, by the wording of the present Constitution R.S. 33:1529 is in conflict with the clear terms of the new Constitution and ceased to be effective.
[3] The Civil Service Commission of New Orleans erroneously contends that Art. XIV, § 9 purports to retain the classified status of an "office or position" which was filled prior to the effective date of the Constitution. However, the clear wording of the section retains such status only for the individual who had attained such status prior to January 1, 1975. The other arguments of the Commission are based upon the assertions that the conclusion we reach may have untoward consequences. Although we may sympathize with the problems this judgment may cause, these arguments address themselves to the legislature.