**Gary BASKIN and Beulah Baskin, Plaintiffs-Appellants,**

v.

**Eugene PARKER and Curtis L. Smith, Defendants-Appellees.**

No. 76–4071.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1979.

Gary Baskin, pro se.

Beulah Baskin, pro se.

H. Evans Scobee, Baton Rouge, La., for defendants-appellees.

## ON PETITION FOR REHEARING

Before COLEMAN, CLARK and RUBIN, Circuit Judges.

PER CURIAM:

We withdraw our prior opinion, 5 Cir., 588 F.2d 965, and substitute the following:

"[T]he King hath no prerogative, but that which the law of the land allows him," declared Sir Edward Coke in Proclamations, 12 Co.Rep. 74, 76 (1611). Now, over three centuries later, we examine further the scope of the principle that those who enforce the law must themselves obey it in the light of the federal Civil Rights Act that permits suit against every person who under color of a state law subjects any citizen to the deprivation of the rights secured by the Constitution and the laws of the United States. 42 U.S.C. § 1983.

Mrs. J. A. Baskin and her son, Gary Baskin, seek damages they suffered as a result of an alleged illegal and unreasonable search of their property by the sheriff and deputy sheriff of Winn Parish, Louisiana. A judgment in their favor was rendered against the deputy sheriff only. They appeal pro se contending that the damages awarded were inadequate and that the failure to find the sheriff personally liable was erroneous.

The action against Sheriff Parker should not have been dismissed. The sheriff may be personally liable for damages for his participation in obtaining the warrants and organizing the search party; however, the district court did not make findings regarding facts critical to this issue. Although inferences might be drawn, we believe it appropriate to remand for further findings of fact. The resume of facts that follows includes both those made by the trial court, which we conclude were all supported by evidence of record, and those additional factual conclusions that appear well established by the evidence and consistent with the court's explicit conclusions.

I

Beulah Baskin, the widow of J. A. Baskin who died on September 5, 1974, owns a 320 acre farm in a rural area in Winn Parish, Louisiana near the town of Winnsboro; Gary Baskin, her son, owns a 400 acre farm in the same area. At the time of the events in question, both were residing in a house situated on Gary's farm; a home on Mrs. Baskin's property was rented to a young couple.

On September 17, 1974, Curtis L. Smith, a deputy sheriff for Winn Parish obtained warrants to search the Baskin properties, including 120 acres owned by the J. A.

Baskin estate, for marijuana and related paraphernalia. Smith lacked probable cause to obtain the warrants because his informants were not credible, and he knew or should have known that the information that had been supplied to him was based on personal grievances against Gary Baskin. The trial court found that, under the circumstances, he had a duty to check the allegations for distortion, misconception or outright untruth.

There was evidence in the record from which the conclusion might have been reached that Sheriff Parker knew before the warrant was obtained of the circumstances surrounding the investigation and participated to some extent in obtaining the warrant, or that he supervised Smith's activities in doing so. Moreover there was evidence that, on the day the warrant was executed, at least part of a posse of four state troopers, three or four deputy sheriffs and the town marshal and his deputy gathered in the sheriff's office, and that the sheriff to some extent directed the posse's activities.

After the warrant was issued, "several" deputies, including Smith, who was apparently in charge, together with the state troopers, left the office in Winnsboro and proceeded to the Baskin property. There they conducted a search described by the trial judge as "transcending the limits of police restraint," and "left a path of destruction upon plaintiffs' property." They forcibly entered both the Baskins' home and their rent house; they destroyed some of their property; they forced locked doors and windows.

The complaint charged violations both of 42 U.S.C. § 1988 and § 1985. With respect to the Section 1985 charge, the court found that there was no evidence that Sheriff Parker and Deputy Smith conspired "to deprive the plaintiffs of their federally protected rights." The infringement was not proved to be the "result of any overt plan or scheme to embark upon such activity." The court found a violation of Section 1983 by Deputy Smith on the basis that he not only procured the warrants improperly but also participated in executing them in an unreasonable manner.

The court held, however, that the evidence "did not establish *any* such participation by the Sheriff" in the "denial of their constitutional rights." (Emphasis by the trial court.) The trial judge evidently concluded that Sheriff Parker arrived at the Baskin property after the search was in progress or had been virtually completed, but the opinion neither states nor implies any findings with respect to whether the Sheriff participated in obtaining the warrants or in directing their service and execution. The court also held that the Sheriff was not vicariously liable under the doctrine of *respondeat superior.*

Concluding finally that the police conducted in executing the search "shocks the conscience," the court awarded $250 to Gary Baskin and $13.85 to his mother for property damage. He awarded each of them $100 as punitive damages. He decided that plaintiffs' counsel had presented the case so ineptly that attorney's fees should be denied. Defendant Smith has tendered the amount awarded.

Despite the evident difficulties created by the manner in which counsel then representing the plaintiff prepared—or, more accurately, failed to prepare—for the trial, and in which he presented the evidence, the judge presided patiently and carefully; he commendably and sensitively inquired into matters neglected by counsel. The plaintiffs attack his findings in only three respects: dismissal of the action against the Sheriff; failure to find a conspiracy; and the amount of damages awarded.

II

The recent decision of the Supreme Court in *Monell v. Department of Social Services,* 1978, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, has changed the law of this circuit on vicarious liability under § 1983. We previously held that where state law would impose vicarious liability, a like cause of action arose under § 1983. *Madison v. Gerstein,* 5 Cir. 1971, 440 F.2d 338, 341; *Lewis v. Brautigam,* 5 Cir. 1955, 227 F.2d 124, 128.

*See also Taylor v. Gibson*, 5 Cir. 1976, 529 F.2d 709, 716; *Carter v. Estelle*, 5 Cir. 1975, 519 F.2d 1136; *Tuley v. Heyd*, 5 Cir. 1973, 482 F.2d 590, 594.

■ After parsing the language used in § 1983 and tracing legislative history, the *Monell* Court concluded that the official sued (in that case the city government) could not be held liable unless action by the officer or pursuant to this official policy caused a constitutional tort. In other words, it rejected respondeat superior as a theory of recovery under § 1983. We interpret *Monell's* ruling as uniformly applicable to § 1983 action in any state. Using the varying contours of local law to define the reach of a federal statutory right of action would make the availability of vicarious liability depend upon the location and, in some states, the nature of the tort. These incidental, irrelevant vagaries should not mold the contours of this national constitutional tort. Adopting each state's law into § 1983 would create a *lex loci* doctrine of respondeat superior granted or withheld, on the basis of state rather than federal policy.

The language of the statute governing the remedies available in civil rights actions, 42 U.S.C. § 1988, supports our conclusion that state vicarious liability doctrines are inapplicable in § 1983 suits. Section 1988 allows state remedies to supplement remedies available under federal law when the federal remedies "are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against the law." Section 1988 also provides that the state remedies adopted must not be inconsistent with the Constitution and laws of the United States. Allowing Louisiana's vicarious liability rules to govern this case would be directly contrary to *Monell's* construction of § 1983, and thus to the requirements of § 1988.

■ Although Sheriff Parker is not liable for damages on the basis of vicarious liability under Section 1983, there is some question as to whether he may be personally liable for damages under that section because of his participation in obtaining the warrants and organizing the search party.

The dismissal of the Sheriff from personal liability for the unreasonable manner in which the warrant was executed is supported by evidence that he did not accompany the search party and that he arrived at the Baskin property after entry into the houses had been effected and the search commenced. There is no evidence that he participated in any property destruction.

However, as we have noted, there was neither explicit nor implicit finding with respect either to his participation in obtaining the warrants or to his part in organizing the search. According to his own testimony, "I had been trying to get enough information together to in fact get a search warrant or to make a case on this particular defendant. . . . [W]e had been working the cases for quite some time." He testified that he was aware of the hearsay nature of the evidence and of the source of at least some of it. He made no effort to have Mrs. Baskin served. Moreover, State Trooper Don McDonald testified that at least part of the posse of seven to ten men assembled in the Sheriff's office and that Sheriff Parker directed two of the men, a deputy and a state trooper, to go to the place Gary Baskin was employed to attempt to locate him and bring him to the property, with instructions that, if they could not, they were to rendezvous with the rest of the group at a church near the Baskin property and join them in the raid. The sheriff's brief concedes, as he must, that he authorized the investigation and organized the search party.

This evidence points toward active participation by Sheriff Parker in obtaining the warrants and in supervising their execution. The trial court should have made express findings as to whether these actions by the Sheriff violated Section 1983, and whether the extent of his participation rendered him liable for damages.

### III

■ Section 1985 does not grant a cause of action for every conspiratorial tort or for every wrong committed by common plan or

design; it grants a federal cause of action only for conspiracies to deprive "any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws." A racial or class-based animus is an essential element of an action under 42 U.S.C. § 1985(3). *Griffin v. Breckenridge,* 1971, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338; *Atkins v. Lanning,* 10 Cir. 1977, 556 F.2d 485, 489; *McLellan v. Mississippi Power & Light Co.,* 5 Cir. 1977, 545 F.2d 919, 924, 928–29; *Ohio Inns, Inc. v. Nye,* 6 Cir. 1976, 542 F.2d 673, 678–79, *cert. denied,* 1977, 430 U.S. 946, 97 S.Ct. 1583, 51 L.Ed.2d 794; *Harrison v. Brooks,* 1 Cir. 1975, 519 F.2d 1358, 1359–60. The plaintiffs neither alleged nor proved any facts tending to show any class-based animus on the part of either Sheriff Parker or Deputy Smith, both Caucasians, against the Baskins, a white farm family. Accordingly, we affirm the conclusion that a conspiracy in violation of Section 1985 was not proved.

## IV

Compensatory damages for the deprivation of a federal right are governed by federal standards as provided in 42 U.S.C. § 1988. *Sullivan v. Little Hunting Park, Inc.,* 1969, 396 U.S. 229, 90 S.Ct. 400, 24 L.Ed.2d 386. This means "that both federal and state rules on damages may be utilized, whichever better serves the policies expressed in the federal statutes." *Id.* 396 U.S. at 240, 90 S.Ct. at 406, 24 L.Ed.2d at 394. Both federal and Louisiana law recognize the right to recover for items of damage that the trial court failed to allow the Baskins to recover.

Emotions are intangible but they are none the less perceptible. The hurt done to feelings and to reputation by an invasion of constitutional rights is no less real and no less compensable than the cost of repairing a broken window pane or a damaged lock. Wounded psyche and soul are to be salved by damages as much as the property that can be replaced at the local hardware store.

Thus, in a number of cases, the federal courts have recognized that personal humiliation, embarrassment, and mental distress imposed as a result of the deprivation of constitutional rights are injuries whose redress in damages is considered compensatory. *E.g., Garner v. Giarrusso,* 5 Cir. 1978, 571 F.2d 1330, 1339; *Hostrop v. Board of Junior College District No. 515,* 7 Cir. 1975, 523 F.2d 569, 579–80, *cert. denied,* 1976, 425 U.S. 963, 96 S.Ct. 1748, 48 L.Ed.2d 208; *Williams v. Matthews Co.,* 8 Cir. 1974, 499 F.2d 819, 829, *cert. denied,* 1974, 419 U.S. 1021, 1027, 95 S.Ct. 495, 507, 42 L.Ed.2d 294, 302; *Seaton v. Sky Realty Company,* 7 Cir. 1974, 491 F.2d 634, 636.

Under Louisiana law, too, "damages for mental anguish, aggravation, distress and inconvenience, are recoverable in an action sounding in tort." *Meador v. Toyota of Jefferson, Inc.,* La.1976, 332 So.2d 433, 438. *See* La.Civ.Code Ann. art. 2315. Such damages are compensatory rather than punitive in nature, *see, e.g., Fontenot v. Magnolia Petroleum Co.,* 1955, 227 La. 866, 80 So.2d 845; *McGee v. Yazoo & M. V. Railroad,* 1944, 206 La. 121, 19 So.2d 21, and are separate and distinct from compensation for physical injury, *see Trahan v. Perkins,* La. App.1967, 197 So.2d 96, 99. Thus, Louisiana courts have awarded damages for intangible injury to human sensibilities in a variety of situations. *See, e.g., Anderson v. Welding Testing Laboratory, Inc.,* La.1974, 304 So.2d 351 (apprehension that radiation burns might cause cancer); *Boutte v. Hargrove,* La.1974, 290 So.2d 319 (assault and battery); *Clark v. I. H. Rubenstein, Inc.,* La.App.1976, 335 So.2d 545 (wrongful accusation of shoplifting); *Hayes v. Dompe,* La. App.1976, 331 So.2d 874 (wrongful seizure of property); *Booty v. American Finance Corp. of Shreveport,* La.App.1969, 224 So.2d 512, *cert. denied,* 254 La. 782, 226 So.2d 771 (unreasonably coercive creditor communication with debtor's employer); *Edwards v. Butler,* La.App.1967, 203 So.2d 90 (improper extrajudicial repossession); *Ford v. State Farm Mutual Automobile Insurance Co.,* La.App.1962, 139 So.2d 798 (mental distress caused by automobile accident which resulted in no physical injury). Therefore both federal and state precedents support the

award of damages to the Baskins for the humiliation and personal indignity visited on each of them as a result both of the wrongful application for and improper execution of the warrants.

In a small community where each resident is known to the neighbors the humiliation from an unlawful search by a number of officers is evident. The emotional distress was aggravated by the circumstances; the Baskin family was of good repute and recently bereaved. Their tenants moved rather than risk another incident. The fact that no criminal charges resulted neither allays suspicion nor repairs the harm to reputation. Moreover, some damage was done merely by the wrongful procuration of the warrants. While these matters may not have been briefed to the trial court, and the issues concerning them may have been inadequately framed, the right to relief was shown by the testimony and covered by the pleadings. The trial judge should have awarded a suitable sum for the emotional injury suffered by each of the defendants.

The defendants assert that it was necessary for the Baskins to show actual damages in order to recover for humiliation and emotional distress, and that they failed to make such a showing. *Carey v. Piphus,* 1978, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252, held that proof of actual damage is required in a Section 1983 action where the plaintiffs were merely denied procedural due process and they would have suffered the same ultimate injury even if they had been afforded a hearing. The plaintiff was properly discharged; the Court stressed that it was unwilling to presume that distress was caused by the manner in which his termination was effected, rather than by the substantive deprivation itself. In the present case, however, the plaintiffs were not merely deprived of a procedural right. They suffered an injury improperly inflicted. There was direct evidence of actual damage and, in addition, real injury could be inferred from the facts. *See also Duncan v. Barnes,* 5 Cir. 1979, 592 F.2d 1336.

We therefore reverse the dismissal of the Section 1983 action against Sheriff Parker and remand the case for the award of damages for humiliation and emotional distress; for determination whether or not judgment should be rendered against Sheriff Parker personally for his own participation in the issuance and execution of the warrants; and thereafter for reconsideration of the amount of damages as to both defendants. The trial judge may, should he find it desirable or necessary, take additional evidence, but he need not do so if he considers the evidence adequate; in that event, he may make these findings on the basis of the testimony he has already heard. In any event, of course, the liability of Sheriff Parker for his deputy's acts is to be limited as provided in La.Rev.Stat.Ann. § 33:1433 (West).

The defendants assert that it is improper for this court to authorize further taking of evidence regarding the amount of damages, if any, that may be appropriate because this unfairly allows the plaintiffs a second opportunity to prove their case. While the normal practice is to decide a case on the record made at the first trial, the defendants cite no authority for the proposition that additional evidence may not be authorized on remand in the interests of justice. The Supreme Court has taken similar action. *See Storer v. Brown,* 1974, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714; *Public Affairs Associates, Inc. v. Rickover,* 1962, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604.

In *Storer v. Brown, supra,* 415 U.S. at 738–40, 94 S.Ct. at 1283–84, 39 L.Ed.2d at 728–29, the Court vacated the district court's decision, in part, and remanded for further proceedings, because "to assess realistically whether the law imposes excessively burdensome requirements . . . upon facts which do not appear from the evidentiary record in this case." 415 U.S. at 738, 94 S.Ct. at 1283, 39 L.Ed.2d at 728. Similarly, in *Public Affairs Associates, Inc. v. Rickover, supra,* the Supreme Court remanded for further proceedings in the district court in order that a full and complete

record could be made. *See Public Affairs Associates, Inc. v. Rickover,* D.C.1967, 268 F.Supp. 444.

REVERSED AND REMANDED.

ALVIN B. RUBIN, Circuit Judge, concurring in part and dissenting in part:

I concur with all of the opinion save the court's refusal to hold the sheriff liable vicariously for acts of the sheriff's deputy within the course and scope of his employment.[1] I cannot agree that the Supreme Court decision in *Monell v. Department of Social Services,* 1978, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611, in expanding the relief available under § 1983 by interpreting it as applicable to municipalities and overruling *Monroe v. Pape,* 1961, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492, has also shrunken the scope of that remedial section by forbidding its supplementation with state remedies and causes of action.

Concerning vicarious liability the opinion in *Monell* said: "a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 under a

respondeat superior theory." 436 U.S. at 691, 98 S.Ct. at 2036, 56 L.Ed.2d at 636. (Emphasis in original). The Court did not mention the question of state remedies for the invasion of civil rights[2] or any of the decisions holding that, where vicarious liability is imposed by *state law* for a tort, Section 1983 incorporates the cause of action and the remedy created by the state. *McDaniel v. Carroll,* 6 Cir. 1972, 457 F.2d 968, 969, *cert. denied,* 1973, 409 U.S. 1106, 93 S.Ct. 897, 34 L.Ed.2d 687 (sheriff); *Carter v. Carlson,* D.C.Cir.1971, 144 U.S.App. D.C. 388, 398–400, 447 F.2d 358, 368–70, *rev'd on other grounds sub nom. District of Columbia v. Carter,* 1973, 409 U.S. 418, 93 S.Ct. 602, 34 L.Ed.2d 613 (municipality); *Hesselgesser v. Reilly,* 9 Cir. 1971, 440 F.2d 901, 903 (sheriff); *Madison v. Gerstein,* 5 Cir. 1971, 440 F.2d 338, 341 (sheriff), *Lewis v. Brautigam,* 5 Cir. 1955, 227 F.2d 124, 128 (sheriff). *See also Taylor v. Gibson,* 5 Cir. 1976, 529 F.2d 709, 716 (sheriff); *Carter v. Estelle,* 5 Cir. 1975, 519 F.2d 1136 (prison administrator); *Tuley v. Heyd,* 5 Cir. 1973, 482 F.2d 590, 594 (sheriff).

The primary reason my brethren advance to read *Monell* restrictively is that to con-

1. Fifth Circuit cases do, of course, hold that a *police chief* is not liable for the acts of his officers absent his participation in or ratification of them. These cases, however, do not establish a rule that precludes us from looking to state law on the issue of a sheriff's liability for the acts of his deputy; rather, they reflect a distinction *state law* commonly makes between the liability of police chiefs and that of sheriffs, which is followed by federal courts in those instances where state law guides the federal rule. Police chiefs generally are not subject to liability for the acts of their fellow police officers under the master-servant rule, *see, e.g., Madison v. Gerstein, supra,* 440 F.2d at 342; *Anderson v. Nosser,* 5 Cir. 1971, 438 F.2d 183, 199, *modified on other grounds,* 5 Cir. en banc 1972, 456 F.2d 835, *cert. denied,* 409 U.S. 848, 93 S.Ct. 53, 34 L.Ed.2d 89; *Jordan v. Kelly,* W.D.Mo.1963, 223 F.Supp. 731, 737; *Pavish v. Meyers,* 1924, 129 Wash. 605, 225 P. 633; *Casey v. Scott,* 1907, 82 Ark. 362, 101 S.W. 1152; sheriffs, on the other hand, generally are subject under state law to such liability for the acts of their deputies. *See, e.g., Madison v. Gerstein, supra; Jordan v. Kelly, supra; Pavish, supra; Casey, supra. See generally,* W. Anderson, A Treatise on the Law of Sheriffs, Coroners and Constables § 61 (1941).

This distinction is based on a difference between the position and authority of the "traditional" or "constitutional" sheriff and that of the police chief. Such a sheriff usually has power to hire and fire deputies, who act in his name in a representative capacity. In contrast, the chief of a municipal police department has limited power over subordinate police officers; they are public servants in their own right, and they are hired under, with tenure protected by, civil service laws. *Carter v. Carlson, supra,* 144 U.S.App.D.C. at 400, 447 F.2d at 370 n.39; *Madison v. Gerstein, supra; Jordan v. Kelly, supra.* Reflecting this rationale, it has been held that, when a sheriff's authority over his deputies is limited by civil service laws restricting his power to hire and fire them, he is not vicariously liable for their acts. *Madison v. Gerstein, supra.* No such limitations have been shown to tie the hands of the Franklin Parish sheriff. *See* La.Const. of 1974, Art. V, § 27, and Art. X, § 2(B)(10); *Civil Service Commission v. Foti,* La.1977, 349 So.2d 305; *Williams v. United States,* E.D.La.1973, 353 F.Supp. 1226, 1233–34.

2. The Court discussed the problems that would be raised by "creation of a *federal law* of *respondeat superior.*" 436 U.S. at 693, 98 S.Ct. at 2037, 56 L.Ed.2d at 637 (emphasis supplied).

tinue to read state law into the federal statute "would make the availability of vicarious liability depend upon the location and, in some states, the nature of the tort." While I agree with their conclusion, the prospect is not alarming. State law still determines much of the reach of Section 1983. The whole section turns on state law; it creates a cause of action against "every person who, under color of any statute . . . of any State . . ." deprives another of constitutional or other federal rights. State law sets the statute of limitations, *O'Sullivan v. Felix,* 1914, 233 U.S. 318, 323, 34 S.Ct. 596, 598, 58 L.Ed. 980, 982; *Knowles v. Carlson,* 5 Cir. 1969, 419 F.2d 369, 370, and state law claims may be joined under the court's pendent jurisdiction. *Miller v. Carson,* 5 Cir. 1977, 563 F.2d 757, 760–62; *Brown v. Knox,* 5 Cir. 1977, 547 F.2d 900, 902, *cert. denied,* 432 U.S. 906, 97 S.Ct. 2950, 53 L.Ed.2d 1078. *See Moor v. County of Alameda,* 1973, 411 U.S. 693, 715–17, 93 S.Ct. 1785, 1799, 36 L.Ed.2d 596, 613.

State law is neither incidental nor irrelevant to the shape of the tort created by national law for the deprivation of civil rights under color of state law. Unlike my brethren, I read Section 1988, 42 U.S.C. § 1988, not as rejecting but as permitting, if not commanding, the incorporation of state law regarding vicarious liability. That statute, set forth in full below,[3] reads in pertinent part:

> The jurisdiction in civil . . . matters . . . conferred on the district courts by the provisions of this chapter . . . shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; *but in all cases where they* are not adapted to the object, or *are deficient* in the provisions necessary to furnish suitable remedies . . . the common law, as modified and changed by the constitution and statutes of the State wherein the court . . . is held, *so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause . . . .* (Emphasis supplied).

Assuredly vicarious liability is not inconsistent with the Constitution of the United States. Nor would the imposition of liability for the acts of the sheriff's subordinate, a responsibility long familiar in the common law violate any *statute* of the United States. My brethren say it would be "directly contrary to *Monell*'s construction" of § 1983 but this is circuitous logic: *Monell* does not forbid the incorporation of state law; it merely holds that § 1983 does not of its own force impose vicarious liability. In reaching the conclusion that § 1983 does not create a federal rule of *respondeat superior,* the *Monell* Court relied on a parsing of the statute's language and on its legislative history. 436 U.S. at 690–694, 98 S.Ct. at 2036–38, 56 L.Ed.2d at 635–637. Neither of these factors would preclude *respondeat superior* as a theory of recovery under § 1983 where state law allows recovery on this basis. The Supreme Court has not itself found state-created vicarious liability repugnant to Section 1983. In *Moor v. County of Alameda, supra,* the court in a footnote[4]

---

3. **§ 1988. Proceedings in vindication of civil rights**

    The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty. . . .

4. We know of no lower court decision that has held otherwise. To the contrary, the lower federal courts have repeatedly rejected

mentioned with apparent approval two court of appeals decisions reaching this result.[5]

*Monell* relied on the legislative history of a predecessor of § 1983, the Civil Rights Act of 1871, particularly the rejection of the Sherman amendment by Congress. *Id.* at 692 n.57, 98 S.Ct. at 2037, 56 L.Ed.2d at 636. This amendment would have imposed liability on a municipality for damage inflicted by persons "riotously or tumultuously assembled." Although this amendment was viewed by some of its opponents as creating a form of vicarious liability, a point that was disputed by the amendment's proponents, *id.,* it really would have imposed a rule of strict liability, not *respondeat superior.* The *Monell* Court itself recognized that the amendment was defeated largely on the basis that it indirectly imposed on municipalities an obligation to keep the peace that could not be imposed directly; the opponents questioned whether such an obligation could constitutionally be exacted of a state agency by the federal government. *Id.* at 672–682, 692 n.57, 98 S.Ct. at 2029–32, 2037, 56 L.Ed.2d at 627–630, 636.

The enactment of a second conference substitute amendment that limited liability to those who, having the power to intervene

against Ku Klux violence, "neglect[ed] or refuse[d] so to do," does indicate, as *Monell* notes, that Congress did not intend to impose vicarious liability on municipalities as a matter of *federal* law, "even while accepting the basic principle that the inhabitants of a community were bound to provide protection against the Ku Klux Klan." *Id.* at 693 n.57, 98 S.Ct. at 2037, 56 L.Ed.2d at 637 n.57. However, this substitute amendment did not pose the same constitutional problems raised by the Sherman amendment; therefore, its enactment in lieu of the Sherman amendment does not create an inference that Congress had a policy-based objection to imposition of vicarious liability on municipalities where such liability is imposed by state law.

The *Monell* Court also found support in the statutory language of § 1983, which subjects to liability any person who "causes" a deprivation of civil rights. It concluded that this language reflects a Congressional intent not to impose vicarious liability on governing bodies. Because the word "causes" is not a term of art that necessarily precludes vicarious liability, the Court looked to the intent of Congress in enacting this provision for guidance in interpreting this language. The Court cited the legisla-

---

the argument § 1988 independently creates a federal cause of action for the violation of federal civil rights. See *Pierre v. Jordan,* 333 F.2d 951, 958 (CA9 1964); *Otto v. Somers,* 332 F.2d 697, 699 (CA6 1964); *Post v. Payton,* 323 F.Supp. 799, 802–803 (E.D.N.Y. 1971); *Johnson v. New York State Education Dept.,* 319 F.Supp. 271, 276 (E.D.N.Y.1970), aff'd, 449 F.2d 871 (CA2 1971), vacated and remanded on other grounds, 409 U.S. 75, 93 S.Ct. 259, 34 L.Ed.2d 290 (1972); *Dyer v. Kazuhisa Abe,* 138 F.Supp. 220, 228–229 (Haw.1956), rev'd on other grounds, 256 F.2d 728 (CA9 1958); *Schatte v. International Alliance of Theatrical State Employees and Moving Picture Operators of United States and Canada,* 70 F.Supp. 1008 (S.D.Cal.1947), aff'd per curiam, 165 F.2d 216 (CA9 1948); cf. *In re Stupp,* 23 F.Cas. 296, 299 (No. 13,563) (C.C.S.D.N.Y.1875).

Petitioners' reliance in this case upon *Hesselgesser v. Reilly,* 440 F.2d 901, 903 (CA9 1971), and *Lewis v. Brautigam,* 227 F.2d 124, 128 (CA5 1955), is misplaced. In *Hesselgesser,* the Court of Appeals ruled that a sheriff could be held vicariously liable in damages for the wrongful act of his deputy which

deprived a prisoner of his civil rights where state law provided for such vicarious liability. The court, to be sure, found authority for the incorporation of state law into federal law in § 1988, but it was acting in the context of a suit brought against the sheriff on the basis of § 1983. Likewise in *Lewis,* where a sheriff was held to be liable for the civil rights violations of his deputies in light of state law which imposed such liability—a decision which also rested apparently upon § 1988, although that section was not specifically cited—the cause of action was properly based on § 1983. These decisions simply do not support the suggestion that § 1988 alone authorizes the creation of a federal cause of action against the County. And here, as discussed below, § 1983 is unavailable as a basis for suit against the County. 411 U.S. at 704, n.17, 93 S.Ct. at 1793, 36 L.Ed.2d at 606–07, n.17.

**5.** *Moor, supra,* is cited with apparent approval in *Monell, supra,* 436 U.S. at 664, n.9, 701, n.66, 98 S.Ct. at 2023, n.9, 2041, n.66, 56 L.Ed.2d at 619, n.9, 642, n.66.

tive history discussed above, and also reasoned that, because *respondeat superior* is based, in part, on a notion that accidents might be reduced if employers are held liable for the actions of their employees, such liability would impose a duty on municipalities similar to that Congress rejected when it defeated the Sherman amendment. However, even the opponents of the Sherman amendment recognized that civil liability for damages might properly be imposed on a municipality for its failure to control the acts of its citizens where the duty to do so is imposed by state law. *See id.* at 678–680, 98 S.Ct. at 2030–31, 56 L.Ed.2d at 628–629; referring to remarks of Representative Poland, Cong.Globe, 42nd Cong., 1st Sess. at 794 (1871), Burchard, *id.* at 795, and Willard, *id.* at 791. Therefore, we have no reason to believe that, in using the word "causes" in section 1983, Congress intended to exclude vicarious liability in those instances where state law provides for it.[6] *See* Blum, *From* Monroe *to* Monell: *Defining the Scope of Municipal Liability in Federal Courts*, 51 Temple L.Q. 409, 412–13 & n.15, 440–41.

Indeed, the use of the word "causes" in § 1983 may indicate that the "person" on whom the act imposes liability is responsible vicariously for the acts of another. *See Hague v. CIO*, 1939, 307 U.S. 496, 59 S.Ct. 954, 83 L.Ed. 1423 (equitable relief appropriate where government officials acquiesce in acts of subordinates). Application of state law vicarious liability here is consistent with the use of this term because it subjects to liability someone who has "caused" the deprivation in the sense that it was brought about by a person under his supervision, for whose acts he is normally responsible, and whom he might have better trained or directed. *Compare Rizzo v. Goode*, 1976, 423 U.S. 362, 96 S.Ct. 598, 46

L.Ed.2d 561, (a § 1983 action that did not involve the incorporation of a state law cause of action).

In *Sullivan v. Little Hunting Park, Inc.*, 1969, 396 U.S. 229, 239–40, 90 S.Ct. 400, 406, 24 L.Ed.2d 386, 393–394, the Court held that § 1988 permits either federal or state rules on damages to be utilized in enforcing a cause of action created by federal civil rights laws, whichever better serves the statutory policy. Application of state law vicarious liability would further the protection of civil rights intended by § 1983 by providing a remedy where a judgment-proof employee of any state agency (not only a municipality) infringes an individual's civil rights.[7] It would also be consistent with federal principles of judicial administration to apply state law on this point.

By a few short sentences the plaintiffs could have incorporated a state law claim into their complaint. Had they done so, the court should certainly have heard the claim under the doctrine of pendent jurisdiction. *UMW v. Gibbs*, 1966, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218, 228; *Pitrone v. Mercadante*, 3 Cir. 1978, 572 F.2d 98, 100, *cert. denied*, 439 U.S. 827, 99 S.Ct. 99, 58 L.Ed.2d 120. It would have been pointless to require a separate suit in state court involving the identical facts. The only additional issue would have been whether the deputy was acting in the course of his employment, a question that would have required little additional evidence, all of which could have been heard in a few minutes. The plaintiffs, and perhaps others in the future, will suffer as a result of inartful pleading. In fact, in this case it is conceivable that the plaintiff's state law claim may now be prescribed. These are all pragmatic reasons that reinforce the basic premise: the blending of state remedies

---

**6.** The cost-sharing or risk allocation justification for *respondeat superior* liability was insufficient to justify the Sherman amendment because it was subject to the same constitutional objections. *See Monell, supra,* 436 U.S. at 693–94, 98 S.Ct. at 2037–38, 56 L.Ed.2d at 637–38. Congress did not indicate an intent to preclude cost-sharing where those constitutional objections are absent.

**7.** I imply no prejudgment of the effect of the eleventh amendment if the result is to impose liability on a state agency. *See Monell, supra,* 436 U.S. at 690–91 n.54, 98 S.Ct. at 2035–36, 56 L.Ed.2d at 635.

into § 1983 is desirable to reinforce its purpose and fulfill its promise, and that union is prohibited neither by § 1983 nor by the *Monell* reading of that statute.[8]

It is ironic that Louisiana law gives the plaintiffs greater relief for the violation of their *federal* constitutional[9] rights than this United States Court of Appeals allows. The vindication of constitutional rights sought by the Civil Rights Act of 1871 should not be so grudging. Injured plaintiffs should not be remitted to attempts to satisfy judgments against insolvent defendants when state law would permit them to look to a higher official. Federal courts should give the plaintiffs the same full measure of relief in one suit that they could achieve in two, or could have obtained in a single federal action by more astute pleading.

---

**8.** Commentators have suggested that, if *Monell* precludes incorporation of state law vicarious liability in a § 1983 action, plaintiffs may still be able to recover from municipalities on vicarious liability grounds through an implied remedy action based on the fourteenth amendment. *See* Blum, *From* Monroe *to* Monell: *Defining the Scope of Municipal Liability in Federal Courts*, 51 Temple L.Q. 409, 418–19 (1978). Note, *Monell v. Department of Social Services*, 47 U.Cinn.L.Rev. 670, 676–77 (1978); Note, *The Supreme Court, 1977 Term: Liability of State and Local Governments under 42 U.S.C. § 1983*, 92 Harv.L.Rev. 311, 320–21 (1978).

**9.** When the search of the Baskin property occurred, Louisiana law subjected a sheriff to liability for "any act or tort committed by one of his deputies," LSA–R.S. 33:1433 (1950), within the course of his employment. *See, e. g., Foster v. Hampton*, La.1977, 352 So.2d 197, 201–02. Thus the Louisiana remedy was avail-

able for violation of a duty imposed by federal law as well as a duty imposed by state law. *Williams v. United States*, E.D.La.1973, 353 F.Supp. 1226.

A Louisiana sheriff may still be subject to such liability for the acts of his deputies, although in 1978, LSA–R.S. 33:1433 was amended by deleting the following paragraph, which contained the language cited above:

That no sheriff of any parish of this state, nor his sureties, shall be liable for any act or tort committed by one of his deputies, or by any person commissioned as deputy sheriff by him, beyond the amount of the bond furnished by said deputy sheriff, unless said deputy sheriff, in the commission of the said act or tort, acts in compliance with a direct order of, and in the personal presence of, the said sheriff, at the time the act or tort is committed.