No. 30,455.

HAZEL KEBERT, as an Individual and as Mother and Next Friend of BERNICE KEBERT and LOUIS EUGENE KEBERT, *Appellants*, v. THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WILSON, THE CITY OF FREDONIA, J. E. WHITESIDE, THE FIDELITY AND DEPOSIT COMPANY, REX SINGLETON, F. B. KIMBALL and OTTO APOLLO, *Appellees.*

(5 P. 2d 1085.)

Opinion filed December 12, 1931.

*A. R. Lamb* and *Clement A. Reed,* both of Coffeyville, for the appellants.

*W. H. Edmundson, J. T. Cooper* and *A. A. Nattier,* all of Fredonia, for the appellees.

The opinion of the court was delivered by

SMITH, J.: This was an action for damages for the death of the husband and father of plaintiffs. Judgment was for defendants, sustaining a demurrer to the petition of plaintiffs. Plaintiffs appeal.

The husband and father of plaintiffs, one Kebert, was confined in the county jail of Wilson county. A ditch was being dug from the jail and sheriff's residence to the middle of the alley at the rear of the jail. It was for the purpose of carrying sewer pipe to connect the sanitary system of the jail and the sheriff's residence with the sewer system of the city of Fredonia.

Kebert was ordered to work at digging this ditch under the provisions of R. S. 1930 Supp. 62-2109. While so engaged the ditch caved in on him and he was killed.

Plaintiffs are his widow and two minor children.

Suit was brought against Wilson county, the county commissioners as individuals, the sheriff of Wilson county and the city of Fredonia. The petition alleged facts about as detailed here, and in addition that the various defendants were negligent in that they did not furnish Kebert a safe place in which to work. The claim of liability against the city of Fredonia is based on the violation of the ordinances of the city by those in charge of the work of the county. It is alleged that this violation was permitted by the city.

A general demurrer in behalf of all defendants was sustained. The appeal is from this ruling.

At the outset appellants recognize the general rule that a county is an involuntary quasi corporation and a mere auxiliary of the state government and partakes of the state's immunity from liability in the absence of statute. They point out, however, certain ordinances of the city of Fredonia, which provide that one who digs in the alleys or streets must execute a bond conditioned that they will do the work in a careful manner. This ordinance also provides that one digging in the streets is liable for any injury to persons or property on account of negligence. On account of these ordinances it is argued that when the county left the courthouse grounds it became the same as any other person or corporation digging in the street and was liable for the negligence of any of its officers and agents. They cite and rely on *State v. Holcomb*, 85 Kan. 178, 116 Pac. 251. There this court said:

"When a state or any of its municipalities goes into another state and there acquires and uses property it does not carry with it any of the attributes of sovereignty nor exercise of governmental power. It has no other or greater right there than any other private owner of property and its property is subject to the taxation which the laws of that state impose." (Syl. ¶ 3.)

To the same general effect is the holding in *Baker v. Kansas City*

*Mo.,* 118 Kan. 27, 233 Pac. 1012. Appellants argue that the same relation exists between Wilson county and Fredonia as exists between Kansas and Missouri. We cannot accept that analogy. The trouble with it is that Wilson county receives all of its powers, rights and immunities from the state, its sovereign. Fredonia receives all of its powers, rights and immunities from the same sovereign. They are both municipal corporations, creatures of the statutes of Kansas. There are many of the functions of the state sovereignty that the legislature has seen fit to provide shall be performed through the medium of the county. It would hardly be contended that the county was on foreign soil when the sheriff was collecting the delinquent taxes on the property in Fredonia, or when the register of deeds was recording the real-estate transfers for property located in the city, or the probate judge issuing marriage licenses to residents of the city. As far as liability is concerned the county is in the same position when digging in the streets of Fredonia as though the state had been doing it. Its immunity from suit springs from the same legal principles. We conclude that the demurrer was properly sustained as to Wilson county.

This suit was also brought against the sheriff of Wilson county and the three county commissioners as individuals. They seek to place the liability of these officers on the ground that R. S. 19-802 provides that the sheriff shall give bond to well and faithfully perform and execute the duties of the office, and R. S. 19-805 provides that the sheriff shall be responsible on his bond for the default or misconduct of his deputies. The petition alleges that Kebert at the time of his death was under the direction and supervision of Frank Henshall, a deputy sheriff, who was acting as guard and foreman for the sheriff and the members of the board of county commissioners. It will be helpful to consider here the language of the statute pursuant to which this work was being done. It is R. S. 1930 Supp. 62-2109, and is as follows:

"Whenever any able-bodied male prisoner is confined in the county jail of any county or the jail of any town or city, having been convicted of a misdemeanor or the violation of an ordinance of such town or city and being confined in punishment therefor, the sheriff of such county or the marshal or chief of police of such town or city shall under the direction of the county commissioners or governing body of any city, compel such person to work at hard labor eight hours of every working day."

There is a further provision that such labor be employed on public roads and highways "when no other work is available." Under the

terms of this statute the only connection the sheriff had with this prisoner was to take him to work from the jail, bring him back and see that he did not run away while out of the jail. He had no control over what the prisoner did or the conditions under which he did it. It is noted that the petition alleges that Henshall was a deputy sheriff, but that does not change the fact that under the statute he was working for the commissioners.

In arguing that the county commissioners are personally liable appellants insist that the digging of this sewer ditch and laying the pipe line therein was a private enterprise, and that the immunities with which the commissioners are clothed when performing a governmental function do not protect them here. This contention is not good. They were performing a governmental function when they provided work for the prisoners, and when they saw to it that the sanitary system at the jail was connected with the sewer system of the city. The statute is mandatory that they should provide work for the prisoners. It is well settled that the maintenance of the courthouse, jail and other county property is one of the duties of the board of county commissioners. There is no allegation in the petition that the commissioners were negligent in the person they put in charge of the work in this particular case. In the absence of such an allegation they are not liable for the negligent acts of one whom they put in charge. If there is any liability at all it must come from the doctrine of *"respondeat superior."* The basis of that doctrine is the benefit that comes to the employer from the work of the employee and it does not apply to a public officer employing agents in the discharge of a public duty. (*McKenna v. Kimball,* 145 Mass. 555; *Bowden v. Derby,* 97 Me. 536, 63 L. R. A. 223.) This rule is also followed in 43 C. J. 717. We conclude that the demurrer as to the sheriff and the county commissioners was properly sustained.

Appellants argue that the city of Fredonia was liable for the death of Kebert. They base this contention on the fact that the ordinances with reference to digging in the streets and making sewer connections provide for the appointment of a plumbing inspector and that his duties shall be to see that all work is done in a workmanlike manner. It is argued that had this ordinance been enforced the condition of the ditch, which caved in, and the fact that it needed shoring and walling up would have been discovered and the tragedy averted. There is no allegation that any officer,

agent or employee of the city was negligent. This court has announced the rule many times that the city is not liable for failure on the part of its officers to enforce an ordinance of the city. (See *Kretchmar v. City of Atchison*, 133 Kan. 198, 299 Pac. 621, and cases there cited.) We conclude that the demurrer was properly sustained as to the city of Fredonia.

The judgment of the district court is affirmed.