**Elmore MARKS, Jr., Plaintiff,**

v.

**LYON COUNTY BOARD OF COUNTY COMMISSIONERS, Daniel R. Andrews, Sheriff, and St. Paul Fire & Marine Insurance Company, Defendants.**

Civ. A. No. 81–1682.

United States District Court, D. Kansas.

Aug. 10, 1984.

Broc E. Whitehead, Randy W. Stalcup, Wichita, Kan., for plaintiff.

Philip E. Winter, Asst. Lyon County Atty., Emporia, Kan., Alan L. Rupe, Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, Kan., for Bd. of County Com'rs.

Duane D. Guy, Guy, Helbert, Bell & Smith, Emporia, Kan., for Daniel R. Andrews.

Randall E. Fisher, McDonald, Tinker, Skaer, Quinn & Herrington, Wichita, Kan., for Daniel R. Andrews and St. Paul Fire & Marine Ins. Co.

## OPINION AND ORDER

THEIS, Senior District Judge.

This case brought pursuant to 42 U.S.C. § 1983 [§ 1983] involves claims that the plaintiff, Elmore Marks, Jr. [Marks], suffered violations of his constitutional rights during his incarceration in the Lyon County Jail. Specifically, Marks contends that the defendants Lyon County Board of County Commissioners [the Commissioners] and Sheriff Daniel R. Andrews violated Marks's rights by failing to provide proper medical care and adequate meals to Marks during his incarceration. This case is currently before the Court on a motion for summary judgment by the Commissioners and a motion for summary judgment by Andrews and defendant St. Paul Fire & Marine Insurance Co. [St. Paul], the surety for the sheriff's bond Andrews was statutorily required to post. For the reasons that follow, these motions shall be granted.

The Court is familiar with the limited conditions in which summary judgment may be granted. Summary judgment may be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Tenth Circuit has noted that the relief offered by Rule 56 is "drastic, and should be

applied with caution ...." *Machinery Center, Inc. v. Anchor National Life Ins. Co.,* 434 F.2d 1, 6 (10th Cir.1970). Therefore, the Court must look at the record in the light most favorable to the non-moving party. *Lindley v. Amoco Production Co.,* 639 F.2d 671, 672 (10th Cir.1981); *Prochaska v. Marcoux,* 632 F.2d 848, 850 (10th Cir.1980), *cert. denied* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981). Furthermore, before summary judgment may be granted, the moving party must establish its entitlement to summary judgment beyond a reasonable doubt. *Madison v. Deseret Livestock Co.,* 574 F.2d 1027, 1037 (10th Cir.1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.,* 516 F.2d 33, 36 (10th Cir.1975). Summary judgment should not be granted if circumstantial evidence or factual inferences tend to establish genuine issues for trial. *Barber v. General Electric Co.,* 648 F.2d 1272, 1278 (10th Cir.1981); *Frito-Lay, Inc. v. Retail Clerks Union Local No. 7,* 629 F.2d 653, 656 (10th Cir.1980).

The following facts, having not been controverted in accord with Local Rule 15(c), are deemed admitted. Marks was incarcerated in the Lyon County Jail at Emporia, Kansas from June of 1981 to October of 1981. During his incarceration, Marks repeatedly requested medical attention for medical problems including ingrown toe nails, nausea, and a testicle which he allegedly injured after falling while stepping out of the jailhouse shower. Marks was dissatisfied with the jailers' responses to his medical complaints and asserts their actions constitute an intentional or negligent denial of proper medical care. However Marks never voiced his complaints about the responses to his complaints to Andrews.

Marks also did not feel that his jailhouse diet was adequate. During Marks's imprisonment at the Lyon County Jail, the meals were provided by Blaylock's Catering pursuant to a contract with the Commissioners. Marks contends that the meals he received during his incarceration were inadequate both in quality and quantity. However, Marks again never voiced his complaints about the food to Andrews. Furthermore, Blaylock's Catering was responsible for determining the menu, the quantity of food per meal, and the method of delivery.

Marks asserts that Andrews and the Commissioners are liable for any constitutional violations which may be found as a result of the alleged inadequate quality and quantity of food provided him during his incarceration at the Lyon County Jail. However, it is clear that neither the Commissioners or Andrews were responsible for preparing the food served Marks or determining its quantity. Those responsibilities rested with the caterer. The only control either defendant had over the caterer was the power to terminate the caterer's contract.

 The Commissioners cannot be held liable under § 1983 for Marks's allegedly inadequate diet. The relationship between the Commissioners and the caterer was that of an employer—employee, or more probably an employer—independent contractor. Clearly an employer of an independent contractor may not be held generally liable for the actions of the independent contractor. *Davis v. Kansas City,* 204 Kan. 524, 464 P.2d 154 (1970); *Phillips Pipe Line Co. v. Kansas Cold Storage, Inc.,* 192 Kan. 480, 389 P.2d 766 (1964). While Marks makes the bald assertion in his "Memorandum in Opposition to Defendants' Motions for Summary Judgment" that the Commissioners exercised personal and direct control over the diet provided to Lyon County Jail inmates, the uncontroverted facts clearly show no such control existed. Marks does not assert that the Commissioners were negligent in selecting the caterer that provided the meals claimed to be inadequate. Thus the only manner in which liability may be asserted against the Commissioners for the allegedly inadequate diet is by the doctrine of respondeat superior. The U.S. Supreme Court has held that the respondeat superior doctrine may not be used to assert liability under § 1983 against a municipality. *Monell v.*

*Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). The doctrine of respondeat superior is also unavailable as a means of asserting liability against an individual. *McKee v. Heggy,* 703 F.2d 479, 483 (10th Cir.1983); *McClelland v. Facteau,* 610 F.2d 693, 695 (10th Cir.1979). Therefore the Commissioners may not be held liable under § 1983 for the allegedly inadequate diet received by Marks during his incarceration in the Lyon County Jail.

■ Similarly, Andrews may not be held liable under § 1983 for the inadequacy of Marks's diet. Marks asserts "it is clear that Defendant Andrews personally participated in the decision to hire Blaylocks Caterers as the food provider and he must be held liable for any deficiency in the diet provided by said party." Dk. No. 49 at 19. While Marks has attempted to garb his theory of liability in language of "personal participation", he cannot disguise his only means of asserting liability against Andrews as the doctrine of respondeat superior. Marks's § 1983 claim against Andrews for Marks's allegedly inadequate jailhouse diet must fail. *McKee, supra; McClelland, supra.*

■ Marks further asserts that Andrews and the Commissioners are liable under § 1983 for the intentional or negligent delay of the deputies in providing him with medical attention. He bases this liability, not upon any personal acts of Andrews or the Commissioners, but upon K.S.A. § 19–805 which reads:

> Each sheriff may appoint such and so many deputies as he may think proper, for whose official acts and those of his undersheriffs he shall be responsible, and may revoke such appointments at his pleasure; and persons may also be deputed by such sheriff or undersheriff in writing, to do particular acts; and the sheriff and his sureties shall be responsible, on his official bond, for the default or misconduct of his undersheriff and deputies.

K.S.A. 19–805.

While this statute may facially impose liability upon the sheriff for the constitu-

tional violations of his deputies, it does not impose, either expressly or implicitly, any liability upon county commissioners for the actions of deputies. *See Kebert v. Wilson County Commissioners,* 134 Kan. 401, 404, 5 P.2d 1085 (1931). Since K.S.A. 19–805 does not impose vicarious liability upon the Commissioners for the actions of the deputies, the only other possible means of asserting liability against them is the doctrine of respondeat superior which, as previously discussed, may not be used to impose liability under § 1983. *Monell, supra; McKee, supra.* Therefore, the Commissioners cannot be held liable for any violations of Marks's constitutional rights committed by the deputies.

■ Clearly K.S.A. 19–805 imposes vicarious liability on the sheriff Andrews for the state law torts of his deputies. The U.S. Court of Appeals for the Tenth Circuit has not addressed the issue of whether such a state statute may be used to hold a sheriff vicariously liable under § 1983 for the constitutional violations of his deputies. The U.S. Courts of Appeals for the Fourth, Fifth, and Ninth Circuits have directly addressed this issue and are split on whether a state vicarious liability statute may be used to impose liability under § 1983. *Compare Hesselgesser v. Reilly,* 440 F.2d 901 (9th Cir.1971) (state vicarious liability statute may be used) *and Scott v. Vandiver,* 476 F.2d 238 (4th Cir.1973) (state vicarious liability statute may be used) *with Baskin v. Parker,* 602 F.2d 1205 (5th Cir. 1979) (state vicarious liability statute may not be used). *See generally* Annot., 51 A.L.R.Fed. 285 (1981). A careful analysis of the underlying rationales of the holdings in these cases, however, leads this Court to the conclusion that a state vicarious liability statute should not be used to assert liability under § 1983 against a sheriff.

■ The Ninth Circuit first addressed this issue in *Hesselgesser, supra.* There the court found that the state statute imposing vicarious liability upon a sheriff could be adopted under 42 U.S.C. § 1988

[§ 1988] to impose liability on a § 1983 claim. Section 1988 reads:

> The jurisdiction in civil and criminal matters conferred on the district courts by the provisions of this chapter and Title 18, for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause, and, if it is of a criminal nature, in the infliction of punishment on the party found guilty.

42 U.S.C. § 1988.

The Ninth Circuit examined the state statute in question, found that it was not inconsistent with the Constitution and laws of the United States, and held therefore that § 1988 would authorize the application of the state vicarious liability statute. *Hesselgesser, supra,* at 903. The court's analysis, however, has two crucial flaws.

First, the initial inquiry when deciding whether § 1988 authorizes the adoption of state law is whether "the laws of the United States are deficient in the provisions necessary to furnish suitable remedies ...." *Id.* The Ninth Circuit recognized that this is the preliminary inquiry but yet failed to address it. Another federal appellate judge has addressed this question and has indicated that failing to apply the state vicarious liability statute leaves the civil rights plaintiff with a claim against only the deputies who are probably judgment-proof; this, it is argued, demonstrates that the federal remedy is inadequate to give plaintiffs full recovery. *Baskin, supra,* at 1215 (Rubin, J. dissenting in part). This argument is specious. The Court cannot and will not judge the adequacy of the remedy by examining the ability or inability of the defendant to pay the judgment sought by the plaintiff or whether the plaintiff may receive full recovery only from the defendant's supervisor. This "deep pocket" argument would support the application of the respondeat superior doctrine to municipalities who obviously would have a much deeper pocket than either the deputy or sheriff. Just such an argument has been expressly rejected by the U.S. Supreme Court. *Monell, supra,* 436 U.S. at 693–694, 98 S.Ct. at 2037. This Court rejects that argument here. The application of K.S.A. 19–805 is unnecessary in order to fully vindicate Marks's constitutional rights. Thus, § 1988 does not authorize the application of K.S.A. 19–805 to the § 1983 claim asserted in this case.

 Second, even if the application of K.S.A. 19–805 were necessary, its application is inconsistent with federal law, specifically, the clear language of § 1983. Section 1983 reads:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, *subjects, or causes to be subjected,* any citizen of the United States of other person within the jurisdiction thereof to the deprivation of any rights, privileges, of immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (emphasis added). The language "subjects, or causes to be subjected" clearly indicates that some personal act of commission or omission is necessary before liability may be imposed. Imposition of liability on a person who has taken no personal action solely on the grounds of a state vicarious liability statute would expand liability under § 1983 beyond that imposed by the plain language of Congress. The Fifth Circuit found the application of a state statute imposing vicarious liability no

different than the application of state law in other areas such as state statutes of limitations used for § 1983 actions, state survival laws used for § 1983 actions, the elements of a § 1983 claim as supplied by state tort law, and defenses to § 1983 actions as drawn from state law; all of which have been readily adopted under § 1988. *See Scott, supra*, at 242. However, a fundamental difference exists between the application of a state statute imposing vicarious liability and the other areas of state law applicable to § 1983 actions through § 1988. As stated earlier, the application of a state vicarious liability statute expands the scope of persons who may be held liable for constitutional violations beyond that established by the language of § 1983. The other areas of state law define the type of acts for which a person may be held liable (state law tort elements and defenses) or when procedurally recovery may be had (statutes of limitations and survival of claims). Application of these other areas of state law to § 1983 actions does not expand the scope of liability as application of a state vicarious liability statute would do. This Court refuses to expand the scope of § 1983 liability absent a clear indication that such an expansion was intended by Congress. There is no such indication in this case.

The Fifth Circuit based its decision that a state vicarious liability statute could not be applied to § 1983 actions upon the U.S. Supreme Court's decision in *Monell. See Baskin, supra.* In fact, the Fifth Circuit had initially issued an opinion applying the state vicarious liability statute in *Baskin* but withdrew that opinion after further reflection upon the *Monell* opinion. *Compare Baskin v. Parker*, 588 F.2d 965 (5th Cir.1979) *with Baskin v. Parker*, 602 F.2d 1205 (5th Cir.1979). This Court relies not so much on the reasoning in *Monell* as it does upon the express language of §§ 1983 and 1988.

 In summary, this Court is unpersuaded by the reasoning of the Fourth and Ninth Circuits and holds that K.S.A. 19–805 may not be used to impose liability under § 1983 upon a sheriff for the actions of his deputies when the sheriff has not acted personally to violate the plaintiff's constitutional rights. Accordingly, the § 1983 claims by Marks against Andrews and the Commissioners cannot stand.

 The Court is now faced with the question of whether it should exercise pendent jurisdiction over the state law claims of Marks against Andrews and the Commissioners since all of Marks's federal law claims against these defendants have been dismissed. When the federal law claims are dismissed before trial, the state law claims should generally be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). In this case, Marks would have no time impairment to asserting his claims against Andrews in state court. *See* K.S.A. 60–511(4) (five-year statute of limitations applicable to action on official bond of sheriff). Therefore, this Court shall decline to exercise pendent jurisdiction over the state law claims asserted by Marks.

IT IS THEREFORE ORDERED that the motion for summary judgment by the Commissioners is hereby granted and the motion for summary judgment by Andrews and St. Paul is also hereby granted.

IT IS FURTHER ORDERED that the state law claims asserted by Marks are hereby dismissed without prejudice and this order disposes of all claims of all parties in this action.