The Honorable Becky Hutchins State Representative, 50th District 700 Wyoming Holton, Kansas 66436
Dear Representative Hutchins:
You request our opinion on several issues related to a county sheriff's authority to enter into agreements whereby tribal police officers are appointed as deputies for purposes of enforcing state laws in specified circumstances. We address each of your questions in turn.
"What is the statutory authority for cross deputization of tribalpolice by the county?"
K.S.A. 19-805 provides in part as follows:
 "(a) In addition to the undersheriff, the sheriff also may appoint, promote, demote and dismiss additional deputies and assistants necessary to carry out the duties of the office, for whose official acts the sheriff is responsible. Persons may also be deputized by such sheriff or undersheriff, in writing, to do particular acts. The sheriff and sureties of the sheriff shall be responsible, on the official bond of the sheriff, for the default or misconduct of the undersheriff and deputies.
 "(d) Any personnel action taken by the sheriff under this section shall be subject to the following: (1) Personnel policies and procedures established by the board of county commissioners for all county employees other than elected officials; (2) any pay plan established by the board of county commissioners for all county employees other than elected officials; (3) any applicable collective bargaining agreements or civil service system; and (4) the budget for the financing of the operation of the sheriff's office as approved by the board of county commissioners."
K.S.A. 19-805a provides similar authority for counties having a population in excess of 100,000. Both statutes empower sheriffs to deputize persons to perform particular acts.[1] In our opinion, deputizing tribal law enforcement officers for particular purposes would fall within these provisions.
"Is cross deputization reciprocal, as the phrase would lead one tobelieve? That is, would sheriff's deputies have broader lawenforcement authority on the reservations, and tribal police havegeneral law enforcement authority on and off the reservation as aresult of cross deputization?"
The State of Kansas has jurisdiction "over offenses committed by or against Indians on Indian reservations, including trust or restricted allotments, within the State of Kansas, to the same extent as its courts have jurisdiction over offenses committed elsewhere within the State in accordance with the laws of the State . . ." by virtue of the Kansas Act.[2] Federal courts have held that this Act gives the State jurisdiction over all state law offenses, major and minor, involving Indians on Indian land in Kansas.[3] Additionally, the Tenth Circuit Court of Appeals has held that the Kansas Act enables Kansas law enforcement officials to execute search warrants on tribal land in furtherance of the enforcement of state criminal laws.[4]
Thus, deputization by a Tribe is not necessary for Kansas sheriffs' officers to be able to enforce state criminal laws within reservation boundaries. However, the Tribe may be able to grant sheriffs' officers authority to enforce tribal or other laws that the State does not by federal or state statute already have jurisdiction to enforce. Whether a particular Tribe has granted such authority will depend on tribal authority to do so and whether the particular deputization arrangement so provides.
The extent of tribal law enforcement officers' authority to enforce state laws on and off the reservation as a result of cross deputization will depend on the provisions of the appointments. This office has previously opined that tribal law enforcement officers are not authorized to enforce state laws, even within the boundaries of the reservation, unless they have been properly deputized, or otherwise employed by the county in which the reservation is located, to do so.[5]
 "Would deputized tribal police be agents of the sheriff as aresult of cross deputization? If so, could the sheriff placelimits on the extent of authority of tribal police who aredeputized? Could any such limits restrict cross deputizedofficers to certain activities, such as transporting prisoners,issuing traffic citations, detaining or questioning personssuspected of committing crimes, and so on?"
As mentioned in our answer to your first question, K.S.A. 19-805
authorizes sheriffs to deputize persons "to do particular acts." Clearly the sheriff may place limits on the extent of authority of tribal police who are deputized under this provision and may restrict cross deputized officers to certain activities or certain geographic areas within the county.[6]
 "Who would be liable for actions of cross deputized tribal police?In particular, I am interested in knowing whether the sheriff orthe county could be held liable for the actions of the tribalpolice under federal or state law or common law theories ofnegligent supervision, negligent training, or negligent hiring andretention of cross-deputized tribal officers. This is aparticularly important question because apparently some sheriffshave been told that their insurance rates will significantlyincrease if they deputize tribal police. My concerns in this areaassume that the tribal police would not be formally employed bythe sheriff."
K.S.A. 19-805 provides that the sheriff will be responsible for the official acts of persons appointed by the sheriff to carry out the duties of the office, and that "[t]he sheriff and sureties of the sheriff shall be responsible, on the official bond of the sheriff, for the default or misconduct of the . . . deputies." "Clearly K.S.A. 19-805 imposes vicarious liability on the sheriff . . . for the state law torts of his deputies."[7] However, the Federal District Court for the District of Kansas has held that this statute cannot be used to assert liability under42 U.S.C. § 1983 (federal civil rights actions) against a sheriff for acts of his deputies.[8] (This is not to say that the sheriff would not be held accountable under some theory other than K.S.A.19-805 or 19-805a.)[9] Whether the sheriff will be held liable in a particular case will depend on whether the deputy was carrying out an official duty; i.e. whether the deputy is performing an act for which he or she has been deputized by the sheriff.[10] K.S.A. 19-805 appears to impose liability on the sheriff for official acts of her or his deputies whether they are employed by the county or are deputized to do particular acts. The Court has held that K.S.A. 19-805 does not impose any liability on the county commissioners for the actions of sheriffs' deputies.[11] Whether the county would be held liable under some other theory of law will depend on the facts and circumstances and whether any exceptions to liability may be exerted under the Kansas Tort Claims Act.[12]
 "A related question is whether the tribe would be liable foractions of deputized tribal officers, and if so, how would aninjured party recover damages? Would tribal immunity have to bewaived in this specific area in order for an injured party topursue remedies? Would any such suit be brought in state ortribal court? Would a difference exist in this context betweensuing an individual officer or suing the tribal police officer?"
Whether a Tribe would be liable for acts of its officers will depend on whether the acts complained of were official acts performed on behalf of the Tribe, and whether the Tribe has waived its immunity and agreed to indemnify its officers for such acts. Generally, federally recognized tribal governments enjoy immunity and cannot be sued without the consent of Congress or a waiver of immunity by the Tribe.[13]
 "Indian tribes are `domestic dependent nations' that exercise inherent sovereign authority over their members and territories. Cherokee Nation v. Georgia, 5 Pet. 1, 17, 8 L.Ed. 25 (1831). Suits against Indian tribes are thus barred by sovereign immunity absent a clear waiver by the tribe or congressional abrogation. Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 1677, 56 L.Ed.2d 106
(1978)."[14]
Section 3 (D) of the Gaming Compacts between the State of Kansas and the four resident Tribes provides for waiver of immunity up to the limits of the liability insurance required to be purchased by the Tribes pursuant to Section 3(E) of the Compacts for the purposes stated in that Section of the Compacts. Whether a particular Tribe has waived its immunity for other purposes is a factual issue beyond the scope of this opinion. The appropriate forum for pursuing remedies against the Tribe will depend on the law sought to be enforced,[15] the terms of any applicable agreements or waivers the Tribe may have executed, and many other factual and jurisdictional factors.
"Under the state-tribal gaming compacts, tribal police officersmust attend a state law enforcement training program. Do thoseofficers also have to meet existing statutory qualifications forlaw enforcement officers? Do state qualifications, especiallythose regarding continuing education and criminal activity, applyto those officers during their tenure as tribal police officers?"
In Attorney General Opinion No. 96-76 we addressed the issue of whether tribal law enforcement officers trained at the Kansas Law Enforcement Training Center pursuant to provisions of the Compacts are subject to state law continuing education requirements. We concluded that "because tribal law enforcement officers do not meet the definition of law enforcement officer in K.S.A. 1995 Supp. 74-5602, they are not subject to the continuing education requirements." This conclusion was premised, however, on the assumption that such tribal law enforcement officers had not been deputized by a county sheriff or otherwise employed by the State or a political subdivision of the State to enforce state laws. If deputized by a county sheriff to enforce state law, tribal law enforcement officers would be subject to all statutory qualifications, if any, to which any other person deputized by the sheriff for particular acts would be subject. In addition, tribal police officers would be subject to tribal law qualifications, any applicable provisions of the Gaming Compacts and any additional requirements imposed by the sheriff as a condition of deputization.
"To what extent would a waiver of sovereign immunity be availableto the County and/or Sheriff's office? If not a waiver ofsovereign immunity, what about having the County's insurancecarrier, as well as the [Tribe's] insurance carrier, waiving thedefense of sovereign immunity?"
In light of the liability imposed by K.S.A. 19-805 on the sheriff for official acts of the sheriff's deputies, we assume that this question envisions the Tribe offering to indemnify the county/sheriff for any liability as a result of deputizing tribal law enforcement officers. In Attorney General Opinion No. 83-136, then Attorney General Robert T. Stephan compared the provisions of K.S.A. 19-805 with those of K.S.A. 19-805a and concluded that while a sheriff can require an indemnity bond from appointees under the latter, a sheriff may not do so for appointments made under K.S.A. 19-805. The opinion does not, however, address the issue of whether the sheriff or county may enter a contractual arrangement through which someone other than the appointees/deputies agrees to indemnify the county and sheriff for official acts of the appointees/deputies.
We are unaware of any public policy reason that would preclude a sheriff or county from entering an agreement whereby a third party agrees to indemnify the county and the sheriff for any liability they may incur as a result of negligent acts of the sheriff's deputies while acting in an official capacity on behalf of the sheriff. The extent of indemnification will depend on the specific language of the agreement.
As discussed previously, tribes do have the ability to waive their immunity. To minimize potential claims as to its validity, such waiver should conform with tribal and federal procedural requirements, be express and clearly state the extent of the waiver.[16] Waiver cannot be accomplished by the insurance carrier acting alone, but including a provision in the insurance contract that refers to the Tribe's official waiver of immunity would appear appropriate. The issue would then become how and in what forum the county could seek to enforce the indemnification agreement, as was discussed previously.
"Could the Sheriff enter such a Cross-Deputization Agreementwithout approval of the County Commissioners?"
K.S.A. 19-805 provides that any personnel action taken by the sheriff under the provisions of that statute are subject to any personnel policies and procedures established by the board of county commissioners for all county employees, any pay plan established by the board for all county employees, any applicable collective bargaining agreement or civil service system and the budget for the financing of the sheriff's office. It is doubtful that any of these limitations would come into play with regard to deputizing tribal law enforcement officers for particular acts if those tribal law enforcement officers do not actually become employees of the county. However, if there are costs to the county associated with such appointments, such as an increase in the county's insurance premiums, action of the county commission may be required if the sheriff's existing budget is not sufficient to cover such additional costs.
"Can [Section 15 of the Gaming Compacts] be construed to include alocal entity such as the Jackson County Sheriff?"
Section 15 provides as follows:
 "To the extent permitted by law, the Tribe and the State agree to enter into such cross-deputization agreements as may be necessary and proper to facilitate cooperation between tribal and state law enforcement personnel."
State law does not currently permit the Kansas Highway Patrol, Kansas Bureau of Investigation or State Racing and Gaming Commission to deputize persons except within the parameters of positions and funding available within those agencies for hiring law enforcement officers.[17] Thus, the State has not been able to enter cross-deputization agreements. Whether this provision can be interpreted to include local entities within the term "State" is really irrelevant. County sheriffs have authority to deputize persons by virtue of K.S.A. 19-805 or 19-805a; it is not necessary that the Compacts acknowledge or grant that authority. If the sheriff believes it is necessary and proper to deputize tribal law enforcement officers, and can do so within any constraints lawfully imposed by the county, the sheriff may do so notwithstanding this provision in the Compacts. Conversely, the Compacts do not require the sheriff, the county, the State or the Tribe to enter into such agreements, but merely acknowledges the appropriateness of doing so if the parties to such an agreement determine that it is "necessary and proper to facilitate cooperation between tribal and state law enforcement personnel."[18]
In conclusion, sheriffs are empowered by K.S.A. 19-805 and, in counties with populations in excess of 100,000, K.S.A. 19-805a to appoint deputies for particular purposes. Thus, sheriffs have statutory authority to deputize tribal law enforcement officers to enforce state law within the parameters set by the sheriff. Generally a sheriff is liable for official acts of the sheriff's deputies. However, tribes may agree to waive their immunity for purposes of indemnifying the county or sheriff for any liability incurred as a result of negligent acts of deputized tribal law enforcement officers while acting in an official capacity on behalf of the sheriff. The mechanism for enforcing such an agreement will depend on the terms of that agreement.
Very truly yours,
 CARLA J. STOVALL Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
CJS:JLM:jm
[1] Attorney General Opinions No. 83-136, 79-35, 78-30, 77-45.
[2] 18 U.S.C. § 3243.
[3] Negonsott v. Samuels, 507 U.S. 99, 105, 113 S.Ct. 1119,122 L.Ed.2d 457 (1993); Iowa Tribe of Kansas and Nebraska v. Stateof Kansas, 787 F.2d 1434 (D.Kan. 1986); Oyler v. Allenbrand,23 F.3d 292 (10th Cir. 1994), on remand, cert. den. 513 U.S. 909,115 S.Ct. 278, 130 L.Ed.2d 195 (1994).
[4] Kaul v. Stephan, 83 F.3d 1208 (10th Cir. 1996).
[5] Attorney General Opinion No. 94-152.
[6] See Attorney General Opinions No. 83-136, 79-35, 78-30, 77-45.
[7] Marks v. Lyon County Board of County Commissioners,590 F. Supp. 1129, 1132 (D.Kan. 1984). See also Monroe v. Darr,221 Kan. 281, 288 (1977); Duran v. Mission Mortuary, 174 Kan. 565,578-580 (1953); Zurbucken v. Glens Falls Indemnity Co.,158 Kan. 599, 601 (1944); Pfannenstiel v. Doerfler, 152 Kan. 479, 482
(1940).
[8] Marks, supra note 8.
[9] See 1B Schwartz Kirklin, Section 1983 Litigation:Claims and Defenses §§ 7.17-7.19 (3d Ed. 1997).
[10] Duran, supra note 8.
[11] Marks, supra note 8.
[12] K.S.A. 75-6101 et seq.
[13] Oklahoma Tax Commission v. Citizen Band of PotawatomiIndian Tribe, 498 U.S. 505, 111 S.Ct. 905, 112 L.Ed.2d 1112
(1991).
[14] Id., 111 S.Ct. at 909.
[15] See Attorney General Opinion No. 93-152.
[16] See e.g. 8A Am.Jur.2d Indians § 10 (1995).
[17] See K.S.A. 74-2113; K.S.A. 75-711; K.S.A. 1998 Supp.74-9804(c).
[18] E.g. Tribal State Gaming Compact Between the Prairie Band Potawatomi Nation in Kansas and the State of Kansas, published Fed. Reg., vol. 60, no. 129, 35,320, July 6, 1995.