STILL'S PHARMACY, INCORPORATED, Riis–Wald Pharmacy, Incorporated, M.F.K. Drug Company, Incorporated, Plaintiffs,

Pharmaceutical Society of the State of New York, Incorporated, Plaintiff–Appellant–Cross–Appellee,

v.

Mario CUOMO, Governor of the State of New York, Cesar A. Perales, Commissioner, New York State Dept. of Social Services, Defendants–Appellees–Cross–Appellants.

Nos. 13, 17, Dockets 92–7102L, 92–7104XAP.

United States Court of Appeals, Second Circuit.

Argued Sept. 16, 1992.
Decided Dec. 4, 1992.

Eileen M. Considine, Albany, N.Y. (Beverly Cohen, Paula Fritz Battiste, Hinman, Straub, Pigors & Manning, P.C., New York City, of counsel), for plaintiff-appellant-cross-appellee.

Barrie L. Goldstein, Asst. Atty. Gen., New York City (Robert Abrams, Atty. Gen. State of N.Y., Andrea Green, Deputy Sol. Gen. State of N.Y., of counsel), for defendants-appellees-cross-appellants.

Otto G. Obermaier, U.S. Atty. S.D. New York (Lorraine S. Novinski, Sp. Asst. U.S. Atty., James L. Cott, Asst. U.S. Atty., New York City, of counsel), submitted a brief for amicus curiae Louis W. Sullivan, M.D., Secretary of Health and Human Services.

Before: MINER, ALTIMARI and WALKER, Circuit Judges.

MINER, Circuit Judge:

Defendants - appellees - cross - appellants Mario Cuomo, as Governor of the State of New York, and Cesar A. Perales, as Commissioner of New York State's Department of Social Services ("DSS"), (collectively "the State") moved in the United States District Court for the Southern District of New York, pursuant to Fed. R.Civ.P. 60(b) and 70, to modify a Stipulation of Settlement and Order ("Settlement Order") entered into between the State and the plaintiff-appellant-cross-appellee Pharmaceutical Society of the State of New York ("the Society") and to dissolve an injunction issued by the district court on February 28, 1988 prohibiting the State from deviating from the terms of the Settlement Order. The State desired to change the method of calculating generic prescription drug prices for Medicaid reimbursement and to add a "sunset clause" to the Settlement Order. The Society cross-moved, pursuant to Fed.R.Civ.P. 60(b) and 70, to modify the Settlement Order to increase the dispensing fee for Medicaid drug prescriptions. Following oral argument, an order was entered in the district court (Duffy, J.): changing the method used to calculate generic prescription drug prices in the Settlement Order, dissolving the injunction and denying both the State's motion to add a sunset clause to the Settlement Order and the Society's motion to increase the dispensing fee. Judge Duffy subsequently amended his order to grant a post-proceeding application made by the State to change the method of calculating other prescription drug prices not addressed in his first order. Both parties appeal from the district court's orders. We affirm in part, reverse in part and remand.

## BACKGROUND

We assume familiarity with our opinion in *Pharmaceutical Soc'y of the State of N.Y., Inc. v. Cuomo*, 856 F.2d 497 (2d Cir.1988) ("*Pharmaceutical I*"), affirming the injunction issued by the district court on February 29, 1988, and therefore provide only a brief summary of the facts and circumstances leading to the issuance of the injunction.

In July of 1978, the parties entered into a stipulation regulating the method of calculating prescription drug prices to be paid to pharmacists as health care providers for Medicaid reimbursement in New York. The stipulation was approved by an order of the district court entered on July 7, 1978. Paragraph four of the Settlement Order provides that the State will reimburse pharmacists participating in the Medicaid prescription drug program for all drugs by using the Estimated Acquisition Cost ("EAC") method. The EAC method was the same method used in 1978 by the Health Care Financing Administration ("HCFA") of the United States Department of Health and Human Services ("HHS") to reimburse states for their Medicaid outlays. *See* 42 C.F.R. §§ 447.331-.332 (1986). The Settlement Order provides that the EAC is to be calculated by using the Average Wholesale Price ("AWP") paid by pharmacists for the drugs.

Paragraph nine of the Settlement Order provides that the pharmacists will receive a dispensing fee from the State to reimburse them for the cost of processing Medicaid prescriptions. The fee set in the Settlement Order was $2.60 per prescription and has remained unchanged. Paragraph six requires the State to hold an annual hearing at which the pharmacists can seek an increase in the dispensing fee.

Paragraph eight of the Settlement Order provides that the estimates used to calculate the prescription reimbursements shall be updated no less frequently than four times a year and no more frequently than once a month. Paragraph ten provides that the method for determining prescription reimbursement prices may be changed pursuant to the mandate of federal laws and regulations or state law.

On October 29, 1987, new federal regulations promulgated by HCFA took effect. *See* 42 C.F.R. §§ 447.304, 447.331-.332 (1991). These regulations changed the method used by HCFA to calculate reimbursements to states for generic drugs (referred to in the regulations as "Multiple Source Drugs" or "MSDs"). *See id.* §§ 447.331(a), 447.332. The new method

employed by HCFA was called the Aggregate Upper Limit ("AUL") method. Under the AUL method, HCFA published tables listing the maximum prices it would use in reimbursing a state for various generic drug prescriptions. These prices are referred to in the regulations as Specific Upper Limits ("SULs").[1] *Id.* § 447.332. To be eligible to receive full federal subsidization of its Medicaid outlays under 42 C.F.R. § 447.304, a state's total drug prescription expenditures cannot exceed the aggregate of the SULs for each prescription reimbursed plus a reasonable dispensing fee determined by the state. *Id.* § 447.332(b). Thus, to be eligible for Full Financial Participation ("FFP") in the federal Medicaid program, a state does not have to pay a pharmacist the SUL for each drug as long as the total amount of money it expends does not exceed the aggregate SULs for all the prescriptions for which it provides reimbursement.

The regulations governing all other prescription drugs ("other drugs") continued to provide that the AUL be calculated by using the lower of (i) the EAC of the drug [2] plus a reasonable dispensing fee established by the state; or (ii) the pharmacist's usual and customary charge for the drug. *Id.* § 447.331(b). Thus, the AUL for other drugs is the amount a state would pay if it paid for each drug in this category at the lower of these two figures.

Compliance with the regulations pertaining to generic drugs is not mandatory, and a state may use any method it chooses to reimburse pharmacists for Medicaid drug prescriptions. *See Pharmaceutical I,* 856 F.2d at 502–03. Failure to comply with the federal reimbursement cap, however, results in a loss of federal funds, which a state would have to replace with money from its own treasury.

In January of 1988, believing that the Settlement Order's requirement that AWP be used to calculate EAC violated the new federal regulations and placed it in jeopardy of losing its federal Medicaid subsidies, the State unilaterally amended its regulations to adopt the new federal method of calculating generic drug prescription reimbursement, *see* N.Y.Comp.Codes R. & Regs. tit. 18, § 505.3(h)(2)(v) (1988), without seeking approval from the district court. The new amendment provided for the use of the SULs published by HCFA to reimburse pharmacists for generic drug prescriptions plus a reasonable dispensing fee. Because the State had violated the provisions of the Settlement Order, the Society sought and obtained an injunction from Judge Duffy prohibiting the State from implementing the new regulations. We affirmed the order granting the injunction, holding that it was improper for the State to implement a new regulation changing the method used to calculate the reimbursement prices for prescription generic drugs without first consulting with the pharmacy advisory committee, as provided in paragraph six of the Settlement Order. *See Pharmaceutical I,* 856 F.2d at 497.

Thereafter, on May 24, 1989, the Society moved, pursuant to Fed.R.Civ.P. 70, to hold the State in contempt for its continued failure to comply with the Settlement Order regarding the formula used to calculate the prescription generic drug prices reimbursed to pharmacists. At a hearing held on September 19, Judge Duffy found the State to be in contempt of the 1988 injunction and ordered expedited discovery of State officials, including Attorney General Robert Abrams. Rather than proceeding with discovery, the State agreed to move to modify the Settlement Order. On October 31, the State, pursuant to Fed.R.Civ.P. 60(b) and 70, moved: to dissolve the 1988 injunction; to modify the Settlement Order to allow it to implement the AUL method for reimbursing generic drug prescriptions; and to add a sunset provision to the Settlement Order so as to provide for its termination within a reasonable period of time. The Society opposed this motion and cross-

---

**1.** The SUL is equal to 150% of the published price of the least costly therapeutic equivalent available in the most frequently purchased quantities. 42 C.F.R. § 447.332(b).

**2.** The regulations define EAC as a state's best estimate of the price generally and currently paid for the drug ingredients by the pharmacist. *Id.* § 447.301.

moved to increase the amount of the dispensing fee. In March of 1990, Judge Duffy heard oral argument on both parties' motions and directed that the parties attempt to settle their differences with the aid of Magistrate Buchwald.

In January of 1991, the New York State Legislature ("the Legislature") enacted a law changing, from quarterly to biannually, the frequency with which the costs of prescription drugs are estimated. *See* 1990 N.Y.Laws 2065 (ch. 938, § 36) (repealed 1992). On January 31, the Society moved to enforce paragraph eight of the Settlement Order, which provides for an updating of the estimates used to calculate prescription reimbursements at least four times a year, arguing that the New York statute was preempted by the Omnibus Budget Reconciliation Act of 1990 ("OBRA"), Pub.L. No. 101–508, § 4401(a)(3), 104 Stat. 1388–1, 1388–151 (1990) (to be codified at 42 U.S.C. § 1396r–8), which established a moratorium on reductions in a state's reimbursement limits for prescription drugs if that state was in compliance with the AUL regulations.

In March of 1991, after eleven months of unsuccessful negotiations and after receiving letters from HCFA threatening to begin a noncompliance action against the State for exceeding the AUL caps, the State moved, pursuant to Fed.R.Civ.P. 19 and 21, to join the Secretary of HHS and the Administrator of HCFA as indispensable parties to establish that the State was not in compliance with the Medicaid regulations. The Secretary and the Administrator did not wish to be joined but, with Judge Duffy's permission, filed an *amicus curiae* brief with the district court. In its brief, HHS supported the State's position that the State was not in compliance with the Medicaid regulations because it had exceeded the AUL caps as a result of using AWP to calculate EAC. HHS further asserted that the use of AWP to calculate EAC for other drugs would also cause the State to exceed the AUL caps. HHS took no position as to what changes, if any, were needed to be made to the Settlement Order to bring the State back into compliance.

On September 17, 1991, the district court issued a memorandum and order: (i) granting the State's motion to terminate the injunction and to amend the Settlement Order to use SULs to calculate the reimbursement for generic drug prescriptions; (ii) denying the State's motion to include a sunset provision in the Settlement Order; (iii) denying the Society's motion to amend the Settlement Order to increase the dispensing fee; and (iv) denying the Society's motion to enforce paragraph eight of the Settlement Order. *See Pharmaceutical Soc'y of the State of N.Y., Inc. v. Cuomo,* 774 F.Supp. 826, 832 (S.D.N.Y.1991) (*"Pharmaceutical II"*). Judge Duffy gave the parties twenty days to submit any proposed modifications to his order.

On October 2, 1991, the State proposed to modify Judge Duffy's order to amend the Settlement Order to calculate EAC for other drugs using a discount of ten percent below AWP. The State's letter was supported by an October 16 letter from HHS reiterating the conclusion in its *amicus* brief that the State would not be in compliance with the Medicaid regulations if it used AWP to calculate EAC for other drugs. HHS expressed no view on whether the State would be in compliance if it used AWP discounted by ten percent. The Society opposed the State's post-proceeding motion. On January 19, 1992, Judge Duffy vacated his injunction, effective October 31, 1989—the date on which the State moved to modify the Settlement Order—and granted the State's motion to modify his order to include the provision for other drugs. Both parties appeal from the district court's orders.

## DISCUSSION

### 1. *Standard of Review*

■ Subsequent to the district court's decision, the Supreme Court decided *Rufo v. Inmates of the Suffolk County Jail,* —— U.S. ——, 112 S.Ct. 748, 116 L.Ed.2d 867 (1992), where it adopted the flexible test used in this Circuit for modifying consent decrees, *see New York State Ass'n for Retarded Children, Inc. v. Carey,* 706 F.2d

956, 967 (2d Cir.) (holding that a court of equity's power to modify a decree granting injunctive relief is "broad[ ] and flexible"), *cert. denied*, 464 U.S. 915, 104 S.Ct. 277, 78 L.Ed.2d 257 (1983). Although the activities governed by the Settlement Order do not fall within the narrow holding of *Rufo, see Rufo*, —— U.S. at —— n. 7, 112 S.Ct. at 760 n. 7 ("The standard we set forth applies when a party seeks modification of a term of a consent decree that arguably relates to the vindication of a constitutional right."), both parties urge us to apply *Rufo*. Because the test articulated by the Court in *Rufo* does not differ significantly from the test we articulated in *Carey,* we will apply the *Rufo* holding to the facts of this case. *See Patterson v. Newspaper & Mail Deliverers' Union of N.Y. & Vicinity,* 797 F.Supp. 1174 (S.D.N.Y.1992) (applying *Rufo* test to affirmative action consent decree between private parties). In any event, our conclusion in this case would be the same if we were to apply the *Carey* test without referring to *Rufo.* In applying either standard, we review the district court's modification of a consent decree under Fed.R.Civ.P. 60(b) for an abuse of discretion. *Montco, Inc. v. Barr (In re Emergency Beacon Corp.),* 666 F.2d 754, 760 (2d Cir.1981).

In *Rufo,* the Court held that a party seeking to modify a consent decree must demonstrate that there has been a significant change in the circumstances that gave rise to the consent decree. *Rufo,* —— U.S. ——, 112 S.Ct. at 760. Once the moving party meets this standard, the district court should consider whether the proposed modification is suitably tailored to the changed circumstances. *Id.* The Court described this standard as more "flexible" than tests it had applied in the past. *Id.* —— U.S. at ——, 112 S.Ct. at 758. The Court tempered its holding by noting its concern for equity and not convenience, *id.* —— U.S. at ——, 112 S.Ct. at 760, and that changing circumstances anticipated at the time the consent decree was drafted should not be used as a basis for modification. *Id.* at —— U.S. at ——, 112 S.Ct. at 761.

### 2. The Modification of the Method Used to Calculate Prescription Prices for Generic Drugs

█ In modifying the Settlement Order to permit the State to use the federal SUL method to calculate EAC, the district court found that the changes made in the Medicaid regulations regarding the reimbursement caps could not have been foreseen by the parties to the Settlement Order. The district court, in determining that circumstances had changed significantly enough to justify modifying the Settlement Order, accepted the State's argument that the State could not continue to use AWP to calculate EAC without risking exceeding the caps and forfeiting its federal Medicaid funds.

We find ample evidence in the record to support the district court's conclusion. The evidence introduced by the State includes a list of medications currently reimbursed under Medicaid for the calendar year 1990. The AWP exceeded the federal SUL for every drug on this list, and, in some cases, the State paid more than two dollars above the SUL for the same drug because of its obligation under the Settlement Order to use AWP. The record also includes evidence that, during the months of January, February and March of 1991, only three percent of the generic drugs paid for by the State had SULs that were lower than AWP, causing the State to exceed the federal Medicaid cap by approximately four million dollars. The State's data are further supported by letters written to the State by HCFA during January of 1991 warning the State that, by continuing to use AWP to calculate EAC, it was not in compliance with the Medicaid regulations and risked the loss of its federal Medicaid funds.

We also note that paragraph ten of the Settlement Order expressly reserves to the State "the right to use such methodology for determining reimbursement as may be hereinafter mandated by Federal law or Regulation or by State law." We recognized the relevance of this clause in *Pharmaceutical I,* but did not address the issue at that time because it was not properly

before us. *See Pharmaceutical I*, 856 F.2d at 503 ("[T]here is no showing in the record to support [the] allegation [that the State's use of AUL is mandatory because the use of AWP would have resulted in the loss of federal funds]."). We encouraged the State to argue the applicability of paragraph ten in a subsequent motion to modify the Settlement Order. We now accept the State's argument on the basis of the record before us.

The Society argues that the district court erred in granting the State's motion because the State failed to meet the burden established in *Rufo* of showing that the use of AUL is the most narrowly tailored method to accommodate the changed circumstances. *Rufo* places no such burden on the State, however. *Rufo* directs the district court to make an independent inquiry and only requires that the modification be *suitably* tailored to address the changed circumstances. *Rufo*, — U.S. at —, 112 S.Ct. at 760 (emphasis added). The district court accepted the State's argument that replacing AWP with SUL was suitably tailored to complying with the federal caps because the State could not accurately predict changes in drug prices and thus could not modify the AWP of individual drugs so that its aggregate expenditures would not exceed the AUL. We agree with the State that, in the absence of an alternative method suggested by the Society, the district court did not abuse its discretion in modifying the Settlement Order to use SULs to calculate EAC for generic drugs.

■ The Society further argues that Judge Duffy erred in retroactively vacating his injunction to be effective on the date the State moved to modify the Settlement Order. We apply an abuse of discretion standard in reviewing district court retroactive relief awards. *Spirt v. Teachers Ins. & Annuity Ass'n*, 691 F.2d 1054, 1066 (2d Cir.1982), *vacated on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983). By vacating its injunction as of the date the State moved to modify the Settlement Order, Judge Duffy reduced the amount of retroactive reimbursement owed to the Society by the State. This amount

represents the difference between the reimbursement owed under the terms of the Settlement Order using AWP and the reimbursement wrongfully distributed by the State using the SUL methodology. *Pharmaceutical II*, 774 F.Supp. at 832. Judge Duffy's decision was no doubt based on his concern that New York's taxpayers not be punished for the mistakes made by the State's officers. We find these considerations to be equitable and thus leave undisturbed the district court's decision to terminate retroactively its injunction.

### 3. The Modification of the Method Used to Calculate Prescription Prices for Other Drugs

We agree with the Society that the district court abused its discretion in granting the State's post-proceeding motion to amend the Settlement Order with respect to the method used to calculate reimbursement for other drug prescription prices. This issue was raised for the first time in the *amicus* brief filed by HHS in April of 1991 and was not part of the relief initially sought by the State in its October 1989 motion to modify the Settlement Order. In a letter written to Judge Duffy dated August 1, 1991, the State raised this issue for the first time, inquiring as to whether Judge Duffy wished them to "supplement the record" by presenting more testimony or additional affidavits. The record contains no reference to a reply from Judge Duffy.

■ In his amended order, Judge Duffy fails to refer to any evidence in the record to support his decision to discount the AWP for other drugs by ten percent. Our examination of the record reveals no evidence to satisfy *Rufo*'s requirement that the ten percent discount was suitably tailored to meet the changed circumstances brought about by the new AUL caps. In fact, the October 16, 1991 letter written by HHS to Judge Duffy in support of the State's post-proceeding motion does not support a conclusion that using AWP discounted by ten percent would bring the State into compliance with the Medicaid caps for other drugs. Granting this post-

 **639**

proceeding relief in the absence of a developed record and without giving the Society the opportunity to supplement the record prejudiced the Society. We therefore reverse the district court's amended order with respect to other drugs and remand the case for a hearing on this issue.

### 4. Increasing the Dispensing Fee

■ The district court did not discuss its reasons for refusing to increase the dispensing fee. According to the HHS regulations, the State would not violate the AUL cap if it used SUL plus a "reasonable dispensing fee." 42 C.F.R. § 447.332(b). Our examination of the record discloses sufficient evidence to support the Society's argument that circumstances have significantly changed with respect to pharmacists' dispensing fee costs to render the current fee of $2.60 unreasonable under 42 C.F.R. §§ 50.504(a)(1) and (2), 447.331(b), 447.332(b). This evidence includes data indicating that New York pharmacists' "burden rate" for dispensing a Medicaid prescription was approximately $3.39 in 1982, $4.65 in 1988 and $5.00 in 1990. Given these increased costs and the failure of the State to respond to the increases over a long period of time by fixing a reasonable dispensing fee as required by federal Medicaid regulations, we believe the Society has met its burden of proving a significant change in the circumstances that existed at the time the Settlement Order was approved.

The State argues that the pharmacists are receiving a "hidden" windfall by using AWP in calculating EAC. This argument loses its force once the State changes over to the SUL methodology when reimbursing pharmacists for generic drug prescriptions. We therefore reverse the district court's order denying an increase in the dispensing fee and remand the case for a hearing to determine how much the fee should be increased for generic drugs.[3] We also note that if, on remand, the district court modifies the reimbursement methodology used for other drugs, then it should increase the dispensing fee accordingly for those drugs as well.

### 5. The Sunset Clause

■ The district court correctly denied the State's motion to add a sunset clause to the Settlement Order. Although we agree that a consent decree is not "intended to operate in perpetuity," *Board of Educ. of Okla. City v. Dowell*, 498 U.S. 237, ——, 111 S.Ct. 630, 637, 112 L.Ed.2d 715 (1991), we believe that the State's motion is premature. The cases cited by the State in support of its position involve motions to dissolve injunctions or consent decrees rather than motions to add a sunset clause to provide for dissolving a consent decree sometime in the future. *See, e.g., Hodge v. Department of Hous. & Urban Dev.*, 862 F.2d 859 (11th Cir.1989) (motion to dissolve permanent injunction); *Stewart v. General Motors Corp.*, 756 F.2d 1285 (7th Cir.1985) (motion to vacate permanent injunction). Nothing prevents the State from later making a motion to dissolve the Settlement Order in the absence of a sunset provision, and we recognize that such a motion would be appropriate at a date in the near, rather than in the distant, future.

This Settlement Order has been in effect for almost fifteen years, during which time federal courts have expended considerable resources overseeing matters that should properly be confined to the legislative process. When the State concludes that the specific wrong that the Settlement Order was drafted to cure no longer exists, it should move to dissolve the Settlement Order. Until that time, the inclusion of a sunset clause in the Settlement Order would be based on speculation as to when

---

**3.** We take judicial notice of the fact that, since this case was argued before us, the State first agreed to increase the dispensing fee, *see* N.Y.St.Reg. 30 (Sept. 23, 1992) (increasing the fee to $3.60 effective October 1, 1992, and then increasing it to $3.75 effective January 1, 1993), and subsequently agreed not to implement the dispensing fee increases, *see* N.Y.St.Reg. 31–32 (Oct. 21, 1992) (repealing the dispensing fee increases proposed on September 23 and keeping the fee at $2.60 pending our decision in this case) (to be codified at N.Y.Comp.Codes R. & Regs. tit. 18, § 505.3(f)(6)).

the Settlement Order no longer would be necessary.

### 6. *The OBRA Preemption Claim*

■ The district court rejected the Society's argument that OBRA preempted the statute enacted by the Legislature providing for biannual instead of quarterly calculation of prescription drug prices. Since the district court entered its order, the Legislature repealed the statutory language mandating biannual updating of prescription drug prices. *See* 1992 N.Y.Laws 114 (ch. 41, § 115). This repealer was followed by the adoption of an emergency rule by DSS, effective May 13, 1992, providing for the biannual adjustment of prescription drug prices on April 1 and October 1 unless otherwise required by federal law or regulation. This emergency rule was in effect until July 11, 1992. N.Y.St.Reg. 39 (June 19, 1992) (to be codified at N.Y.Comp.Codes R. & Regs. tit. 18 § 505.3(a)(8)). We agree with the State's argument that the appeal of the district court's order with respect to the statute is moot because the statute has been repealed. *See Hagans v. Wyman,* 527 F.2d 1151 (2d Cir.1975). The emergency rule was not part of the record or the Joint Appendix and was not passed upon by the district court. Thus, it would be inappropriate for us to pass upon its validity with respect to OBRA at this time, *Johnson v. New York State Educ. Dep't,* 409 U.S. 75, 93 S.Ct. 259, 34 L.Ed.2d 290 (1972) (per curiam), and we remand this issue to the district court.

### CONCLUSION

We affirm the district court's order modifying the method used in the Settlement Order to calculate the price of generic prescription drugs. We affirm the district court's order refusing to add a sunset clause to the Settlement Order. We reverse the district court's amended order modifying the method used in the Settlement Order to calculate the price of other prescription drugs and remand for further proceedings. We reverse the district court's order refusing to increase the dispensing fee and remand for further pro-

ceedings. And we remand the question of whether OBRA preempts the State's May 13 emergency rule to the district court.